# Richmond

## WALKER & LABERGE COMPANY, INCORPORATED v. FIRST NATIONAL BANK OF BOSTON.

January 17, 1966.

Record No. 6069.

Present, All the Justices.

*Louis B. Fine (Melvin J. Radin; Fine, Fine, Legum, Schwan & Fine,* on brief), for the appellant.

*John L. Walker, Jr. (Frank W. Rogers; Woods, Rogers, Muse & Walker; Lyne, Woodworth & Evarts,* on brief), for the appellee.

SPRATLEY, J., delivered the opinion of the court.

The First National Bank of Boston, on January 22, 1962, instituted this proceeding against Towers Shopping Center, Incorporated, of Roanoke, Virginia, Times-World Corporation, as lessor of Towers, the trustees under three deeds of trust securing payment of loans from the bank to Towers, and all contractors and subcontractors who had recorded memoranda of mechanic's liens against the leasehold estate of Towers. The bill of complaint alleged that in accordance with the terms of a loan agreement, dated July 27, 1961, the bank had agreed to advance monies to Towers for the construction of its shopping center; that to secure the advances Towers executed in July and August, 1961, three deeds of trust on its leasehold estate; that as of December 31, 1961, it had advanced $3,199,154.38 under the deeds of trust; that the deeds provided, in the event of default by Towers in the performance of covenants therein contained, certain optional remedies to the bank; and that among the options was the right of the bank to discharge, and treat as a part of the debt secured to it, any lien on the property which might be superior to the liens evidenced by the above mentioned deeds of trust.

The bill alleged that Towers was in default in the performance of its covenants, in permitting the filing of mechanic's liens against its leasehold property, and in failing to provide funds for completion of the shopping center.

The bank prayed that the court convene all creditors of Towers; ascertain the amounts of priorities and liens against the property; appoint the trustees in the first deed of trust as receivers of the leasehold estate; and permit it to foreclose its deeds of trust, if it should appear that Towers could not be relieved of its financial difficulties within a reasonable time.

The court appointed receivers, as requested, and also a special commissioner to ascertain and report to the court the assets and liabilities of Towers and the liens against its property. Subsequently, the bank filed two supplemental bills, each of which presented a specific issue of the binding effect of mechanic's lien waivers executed

by Towers' contractors, for a consideration furnished by the bank. Supplemental Bill No. 1 named as defendants only parties already before the court. Supplemental Bill No. 2 brought in as defendants several other persons and firms, including Walker & Laberge Company, Incorporated, who had not been made parties in prior proceedings.

Supplemental Bill No. 2 alleged that Walker & Laberge Company, Incorporated, hereinafter referred to as defendant, had furnished labor and material for the construction of the shopping center; that the bank had, prior to October 31, 1961, paid defendant $35,000.00 on its account [amended by decree of August 31, 1962, to show $40,000.00]; on October 31, 1961, an additional $20,000.00 [amended by the above decree to show $15,000.00]; that, as consideration for these payments by the bank, and as an inducement to the bank to make further loans to Towers on completion of its building, defendant, on October 31, 1961, had executed and delivered a waiver and release of any right it had, or might have in the future, to file or claim a mechanic's lien against the property involved, or any interest therein; and that the waiver reads as follows:

"MECHANIC'S LIEN WAIVER

"TOWERS SHOPPING CENTER, INCORPORATED (hereinafter sometimes referred to as 'Towers') has now about completed a shopping center on property at the southwest corner of Colonial Avenue and Brandon Road in the City of Roanoke, Virginia, leased by it from TIMES-WORLD CORPORATION by lease dated May 16, 1960 and recorded in Deed Book 1075, page 240 in the clerk's office of the Hustings Court for the City of Roanoke, Virginia, and by an amendatory lease dated January 23, 1961 and recorded in Deed Book 1089, page 443. The undersigned has furnished, or will furnish, or both, labor or material, or both, for said project. In consideration of $1.00 cash in hand paid to the undersigned by The First National Bank of Boston, receipt whereof is hereby acknowledged, and as an inducement to said bank to make further loans to Towers in addition to advances already made, the undersigned hereby waives and releases any right that the undersigned now has or may in the future have to file or claim a mechanic's lien against said property or any interest therein on account of labor or material heretofore or hereafter furnished to Towers or to any other party in connection with or incidental to the construction and equipment of said shopping center.

"Dated this 31 day of October, 1961.

"Walker & Laberge, Co., Inc.
"By Henry Walker."

The bill further alleged that notwithstanding the execution and delivery of the waiver, defendant, on January 1, 1962, recorded a memorandum of mechanic's lien for $28,136.50; and that the said amount was correct, but was entitled to be allowed only as an unsecured claim against Towers.

On July 24, 1962, defendant answered, saying that "The one dollar ($1.00) cash [mentioned in the waiver] was not only not paid as recited, but also the item of $20,000.00 mentioned therein was paid on or about September 21, 1961;" that there was "never any unconditional waiver" of its right to a mechanic's lien; "never any valid consideration" therefor; and "all of the parties knew it was a mere matter of facilitating the situation without any release." It added that: "The conduct of the bank in obtaining said alleged waiver constituted fraud." It prayed that the answer "be treated as a cross-bill, praying for affirmative relief," and that "any issue of fact be determined by a jury."

On August 31, 1962, defendant filed an amended answer, in which it stated "that all of the payments made on the job are as follows: August 4, 1961—$20,000.00, September 22, 1961—$20,000.00, and November 1, 1961—$15,000.00, making a total of $55,000.00. Said dates are the dates the credits were posted by Walker & Laberge Company, Incorporated."

The bank moved to strike the answer and amended answer on the grounds: (1) that the facts set out therein did not, in law, constitute a defense; (2) that while there was a general allegation of lack of consideration for the waiver, there was no denial of the payment of $15,000.00 on October 31, 1961, though posted on defendant's books the following day; and (3) no specific facts to support the allegation of fraud.

The court, on September 5, 1963, sustained the motion to strike the answers, with leave to the defendants to file, within fifteen days thereafter, such additional pleading as it deemed proper.

On September 18, 1963, defendant filed a second amended answer, in which it repeated its former averments and denials; and, for the first time, averred that the execution of the waiver "was conditional upon Walker & Laberge Company, Inc., receiving the entire payment

of the said mechanic's lien, interest and cost;" and that it was "understood" that the waiver "would be held in escrow until full payment had been made" to the defendant.

The bank moved to strike the second amended answer on the ground that its averments did not, at law, constitute a good defense to its bill. It pointed out that the alleged verbal agreement was inconsistent with the execution and delivery of the waiver, since payment of defendant's claim in full would "eliminate" any right to a lien, and there would be nothing on which the waiver could operate.

On June 23, 1964, the court sustained the motion to strike for reasons set forth in a written opinion, filed in the cause. The court there said:

"It must be assumed by the Court that some purpose was intended to be accomplished by the execution and delivery of the waiver agreement, and if the contention of the defendant prevails no purpose was accomplished and it deprives the agreement of any operative effect. This result the Court does not conceive to be what the parties intended. The purported condition is such that makes it impossible for the agreement to be operative at any time and have any purpose from its inception, and therefore, if permitted to be shown would nullify the terms of the instrument itself. It is common knowledge that such waiver agreements are in common use in the financing of construction operations and their effect and purpose are well known, and in the absence of fraud or misrepresentation are usually legally enforcible to accomplish that purpose."

Subsequently, on July 9, 1964, defendant filed an additional pleading, in which it adopted its prior answers, and denied every allegation of the bill of complaint, which did not admit that the delivery of the waiver was conditional, and "in expectation" by the defendant of the payment of the balance due. It further averred that, under the circumstances, "the partial payment" made did not constitute a complete release of "all mechanic's liens in excess of the amount which had been actually paid" to defendant. Defendant again prayed that all issues of fact be determined by a jury "as a matter of right and as a plea in equity."

Again, the defendant moved to strike this latest pleading, in that it set up no defense that had not been theretofore determined adversely to defendant.

On July 21, 1964, the court sustained the motion, ordered that Supplemental Bill No. 2 be taken as confessed as to the defendant,

holding that defendant had waived its right to file a mechanic's lien; and that the memorandum for same was improperly recorded. The decree directed that there be noted on the margin of the page of the book in which the memorandum was recorded, a reference to the decree. It further adjudged, ordered and decreed that the defendant was entitled only to an unsecured claim against Towers Shopping Center, Incorporated, in the sum of $28,136.50, with interest from February 1, 1962.

The principal issue here is whether the lower court erred in striking the answers of the defendant, without allowing it the opportunity to present parol evidence in support of its contention that "questions of fact" as to what "the parties intended to do" were "presented by the pleadings in this case, and evidence should have been heard to determine what the facts actually were."

The motion to strike an answer is a motion testing its legal sufficiency, merely a consideration of law, and presents no question of fact. It admits as true all material facts which are well pleaded; but does not admit the correctness of conclusions of law, or inferences drawn from facts alleged. 41 Am. Jur., Pleading, § 331, page 518. *Hoffman* v. *First National Bank*, 205 Va. 232, 236, 135 S. E. 2d 818.

With this rule in mind, it is clear that defendant's contentions that the "conduct of the bank in obtaining said alleged waiver constituted fraud," and that there was "never any valid consideration" for the waiver, were facts admitted by the motion to strike, are not tenable.

The allegation of fraud is no more than a charge that the waiver did not embody defendant's agreement with the bank; and a restatement of defendant's contention that there was a conditional delivery. Fraud is charged only in general terms. It is a conclusion which defendant puts upon the refusal of the bank to agree with its contention.

The allegation of no consideration for the waiver is negated by the admission in the answer of defendant that it received $15,000.00 from the bank as a payment on the account involved, the receipt of which was "posted" in its books on November 1, 1961. The acknowledgment of the payment is material. The date the credit was "posted" on the books, one day after the date of the waiver, is insignificant.

In making its contentions, defendant disregards the rules with reference to the admissibility of parol evidence to vary, contradict, or explain the terms of an unambiguous contract.

"In Virginia, no general rule seems to be better settled than that, in controversies between two parties to a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument." *Godwin* v. *Kerns*, 178 Va. 447, 451, 17 S. E. 2d 410, 412.

In *Whitaker* v. *Lane*, 128 Va. 317, 345, 346, 104 S. E. 252, 11 A. L. R. 1157, cited by each of the parties hereto, we said:

"In a controversy between the immediate parties to a written instrument, the parol evidence rule does not forbid the use of parol evidence to establish any fact that does not vary, alter or contradict the terms of the instrument, or the legal effect of the terms used. These are concluded by the writing, and the parties are estopped to deny them. Thus it is not permissible for a party who has signed and delivered a valid written instrument to show that there was an agreement that he was not to be bound at all, or that suit was never to be brought on it, or that it was to be paid only out of a particular fund, or that a blank endorsement was without recourse, or that it was to be paid at a different time from that stated, or that an endorser should be liable as an assignor, or that a promise to pay money was to be discharged in some other manner, or any other similar defense. For such defenses vary the legal effect of the language used in the instrument." (Citing cases.)

In *Crafts* v. *Broadway National Bank of Richmond*, 142 Va. 702, 710, 128 S. E. 364, we find the following statement:

"It may be confidently affirmed, as the settled law of this State, that where a negotiable note or other unconditional promise to pay at a stipulated time is regular upon its face, and is delivered to the payee as a valid and binding obligation for ever so short a time, no contemporaneous parol agreement can be set up to show that payment was not to be demanded at maturity, or until attached collateral had been exhausted, or upon the happening of any other subsequent event not mentioned in the note itself. All such efforts have as their end to change or vary the terms of the written contract, which we think is contrary to the great weight of authority, and is clearly in conflict with the previous decisions of this court."

In *White* v. *Commonwealth*, 158 Va. 749, 757, 164 S. E. 375, where the directors of a bank sought unsuccessfully to show by parol evidence that a bond was delivered on the condition that it be used only temporarily to protect excess borrowing by the bank, we said:

"The general principle that evidence of a contemporaneous parol agreement is not admissible to vary or contradict the terms of a valid written instrument, except in cases of fraud or mistake, is so familiar and well established that citation of authority in its support would seem to be superfluous. It is a principle founded in wisdom, and cannot be too carefully guarded. Upon its enforcement the certainty and sanctity of written contracts depend, and its violation would be destructive of the most solemn transactions of life.

\* \* \* \* \* \* \* \* \* \*

"But no case has yet told us that it [the bond] can be delivered on condition that its maker should not do the very thing which in it he promised." 158 Va., *supra*, *page* 758.

To the same effect, see *Harvey* v. *R., F. & P. Ry. Co.*, 162 Va. 49, 52, 173 S. E. 351, 92 A. L. R. 240.

Under proper circumstances, parol evidence of a condition precedent may be received to show that a written instrument did not become effective; but in a long line of decisions, we have consistently held that the condition precedent must be neither inconsistent with the instrument itself, nor of such a character that its performance would render the instrument wholly ineffective or nugatory.

"(W)here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. (Citing cases.) This is so because the writing is the repository of the final agreement of the parties." *Globe Company* v. *Bank of Boston*, 205 Va. 841, 848, 140 S. E. 2d 629.

Cases from other jurisdictions cited by both the bank and defendant affirm the principle that parol evidence is not admissible to show a conditional delivery of a mechanic's lien waiver where the condition is repugnant to the very terms of the written contract.

In *Dux* v. *Rumsey*, 190 Ill. App. 234, 237, the circumstances were strikingly similar to those here. There, the contractor expressly waived the mechanic's lien and then contended that the parties had agreed that the waiver would be effective only when the contractor was paid in full. Disregarding this argument on appeal, the Court said: "The law gives him no lien if he was paid in full;" the waiver agreement would be meaningless if the condition were allowed, and the court must presume that a contract has some purpose in order to reach a reasonable interpretation of the contract.

In a later case, the Illinois Court, in *Stolze Lumber Co.* v. *Oglesby*,

266 Ill. App. 569, held that a mechanic's lien waiver did not take effect because the condition upon which it was delivered had not been met. The condition there was that the waiver would go into effect if the general contractor took a particular type of note from the owner. The contractor took a different sort of note from the owner. The condition was not contrary to the waiver; but merely determined when the waiver was to be effective, if at all, and not contrary to what the waiver said. The condition did not render the waiver meaningless, since if the condition had been met, there would have been something to be waived.

In the *Dux* case, *supra,* the condition was contrary to the waiver itself. The two cases emphasize the distinction that formed the basis for the trial court's decision in the present case.

*Hammond Hotel and Improvement Co.* v. *Williams,* 95 Ind. App. 506, 176 N. E. 154, 159, is directly in point. There a building contract obligated the owner to make certain payments to the contractor as the work progressed, and contained a waiver by the latter of his right to file a mechanic's lien. The owner failed to make the stipulated payments. The contractor then filed a mechanic's lien, claiming that his waiver was conditioned upon the payments being made by the owner. In disallowing the lien, the court said:

"The covenant waiving a mechanic's lien cannot depend on the owner's agreement to pay, because there could not be a lien in any event if the owner made the payments according to the contract. The law gives a lien when there is a failure to pay, and if the contractor waives his lien, then it must follow that it is waived in the event there is a failure on the part of the owner to make the payment."

The following language is found in Restatement of Contracts, § 241, page 236:

"Where parties to a writing which purports to be an integration of a contract between them orally agree, before or contemporaneously with the making of the writing, that it shall not become binding until a future day or until the happening of a future event, the oral agreement is operative if there is nothing in the writing inconsistent therewith."

Approval of the contention of the defendant here would destroy the waiver and its purpose. "Unless it is absolutely necessary, a contract should not be construed to contain provisions impossible of performance." *Hunter* v. *Hollingsworth,* 165 Va. 583, 590, 183 S. E. 508, 511. When a condition is such as it would contradict the

express terms of the written instrument parol evidence of such condition is inadmissible. *Coal River Collieries* v. *Eureka Coal Co.*, 144 Va. 263, 132 S. E. 337, 46 A. L. R. 485.

Here, the language of the waiver is clear, simple, unambiguous and free of uncertainty. Its purpose is stated on its face. It recites that it was executed in consideration of cash received, and "as an inducement to said bank to make further loans to Towers in addition to advances already made." It contains no "if," "unless," or "except," nor any similar word. It was a present agreement, effective at the time made, and its obvious purpose was not to leave the rights of the parties as they would have been had the waiver not been made. No oral evidence is required to explain its meaning or purpose.

If the contention, that the waiver was conditioned upon defendant's claim being paid in full should be sustained, it would make the waiver mean that defendant agreed to waive its lien only in case it was paid in full. If paid in full, the law gives it no lien. Satisfaction of its claim removes any right it may have had to effect a lien. The purported oral evidence, if proven, would deprive the waiver of all meaning, and leave the parties in exactly the same position they occupied had the waiver not been executed.

The decree of the lower court is affirmed.

*Affirmed.*