## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Interior Specialty Construction, Inc.

v.

Brooks Contracting, Inc.

December 21, 1994

Case No. L94-218

BY JUDGE WILLIAM H. LEDBETTER, JR.

The question presented is whether the parties have made an enforceable agreement to settle this litigation.

### Facts

In 1993, Brooks Contracting (the defendant) contracted to perform renovation work at Spotsylvania Mall for its owner, The Cafaro Company. By purchase order dated March 31, 1993, as amended, Brooks subcontracted a portion of the work to Interior Specialty (the plaintiff). When it was not paid for its work, Interior Specialty filed this action. Brooks denied the indebtedness in its grounds of defense. The case was set for trial on January 9, 1995.

During the summer of 1994, counsel for the parties exchanged correspondence in an effort to resolve the dispute, and Brooks transmitted a check to Interior Specialty for $21,874.34. When the balance was not forthcoming, Interior Specialty filed a petition to enforce settlement of its claim. In response, Brooks asserted that its proposal to settle the litigation was contingent upon release of funds to it by Cafaro. Because those funds are the subject of a dispute between Brooks and Cafaro (# L94-129, pending in this court), Brooks contends that it is not obligated to complete the settlement.

The petition to enforce settlement was heard on November 28, 1994. No testimony was offered. Instead, counsel made certain representations and

introduced, by stipulation, copies of their correspondence that Interior Specialty says created the settlement. The court offered the parties the opportunity to present further evidence by way of testimony or additional documentation, but they declined.

(Ordinarily, enforcement of a purported settlement of litigation is maintained by separate bill in equity with an evidentiary hearing, if necessary, while the other lawsuit is stayed. No one has questioned the method used by Interior Specialty to get the issue before the court, i.e., a petition filed in the pending lawsuit, and both parties have requested a decision based on the evidence and arguments presented at the November 28th hearing. Therefore, the court will treat the matter as being in a proper posture for determination.)

The items of correspondence that form the basis of Interior Specialty's settlement claim are as follows.

On July 27, 1994, counsel for Brooks wrote counsel for Interior Specialty, proposing a "settlement of the suit filed by your client against Brooks." The letter proposed that Brooks pay Interior Specialty $43,748.72 "as payment in full" for work done on the Spotsylvania Mall project. Brooks's counsel explained that "this amount represents $48,848.72 still outstanding . . . less the $5,100.00 backcharge for drywall package repairs made by [another subcontractor]." The letter then proposed that each party would execute a release of all claims and pay their own attorney's fees. Next, Brooks's counsel proposed that Interior Specialty release any rights it may have had to a mechanic's lien. Finally, the proposal called for Interior Specialty to dismiss this action with prejudice upon receipt of payment. The proposal was to "remain open" until August 3, 1994.

On July 29, 1994, counsel for Interior Specialty wrote back to Brooks's counsel, confirming "our acceptance of your offer of $43,748.22 as payment in full of [Interior Specialty's] claim." The letter noted that the acceptance was made with the understanding that payment would be "prompt" and in the form of a certified check. Counsel acknowledged that upon receipt of the check, mutual releases would be executed, a certificate of satisfaction of mechanic's lien would be delivered, and this lawsuit would be dismissed with prejudice.

Brooks paid Interior Specialty $21,874.34 on August 16, 1994. In its transmittal letter, a Brooks official described the payment as "5% of retainage due on the [Spotsylvania Mall] project." Brooks then advised Interior Specialty "that the remaining retainage balance will not be

processed for payment until this project [has] been released by the Cafaro Company as per Interior Specialty Construction's contract."

Displeased with the import of that letter, counsel for Interior Specialty telephoned Brooks's attorney. Although the full content of that conversation is not known, Brooks's attorney wrote Interior Specialty's attorney on September 1, 1994, confirming the telephone conversation "in which I indicated to you that the letter received by you from Brooks Construction, Inc., dated August 16, 1994, is not to be read as requiring settlement of all matters between Brooks and The Cafaro Company." He went on to say that "the terms of the agreement" reached between the parties had not changed.

Nevertheless, Brooks did not pay the remaining amount of the settlement proposal. Brooks's counsel assured Interior Specialty's counsel that the balance would be "paid promptly" upon Brooks's receipt of "the funds owed to [Interior Specialty] and other subcontractors and being held by Cafaro." In other words, Brooks's attorney said that Brooks's August 16th letter was not intended to mean that it would pay no more until it had received *full* payment from Cafaro, but it would not pay the balance until it had received from Cafaro all funds owed subcontractors. Finding that explanation unacceptable, Interior Specialty filed its petition to enforce the settlement.

### Decision

Brooks argues that its settlement proposal of July 27th was made in the context of, and subject to, previous discussions between counsel concerning the Brooks-Cafaro dispute and Brooks's need to receive funds from Cafaro before paying Interior Specialty.

Prior discussions between counsel probably would be inadmissible under the parol evidence rule. See generally, Friend, *The Law of Evidence in Virginia* (4th Ed. 1993) Vol. 2, pp. 297 et seq. In any event, there is no probative evidence before the court regarding such discussions. Even assuming the truth and accuracy of counsel's representations about those earlier conversations, it is plain that Brooks's settlement proposal of July 28th contains no such contingency. The proposal was a clear and unambiguous offer, contained in four numbered paragraphs. When the offer was accepted in writing by Interior Specialty a few days later, it became a binding obligation on both parties.

(Although no one has suggested otherwise, it is worth noting that Interior Specialty's call for "prompt payment" in its acceptance letter was not

a rejection of the terms of the offer or a counter-offer. No additional material term was contained in the acceptance, since the law imputes "prompt" or "seasonable" payment in any case where money is due unless the parties agree otherwise. Also, no one has suggested that Brooks withdrew its offer before Interior Specialty accepted it. Thus, the offer and acceptance created a contract.)

Under well-settled principles, prior discussions and negotiations between the parties are irrelevant to a proper judicial interpretation of an unambiguous written offer. There are some exceptions, but none is applicable here. For example, an agreement, although unconditional on its face, may be in fact subject to a condition precedent so that the agreement is not to become operative at all unless and until some pre-agreed condition has been fulfilled. Such is not the case here. There is no evidence that Brooks's July 27th offer was not to be valid unless and until the occurrence of an event. Brooks merely argues that *payment* of the settlement amount was not to be made until it received certain monies from Cafaro, not that the whole agreement was contingent on receipt of those monies. In any event, the rule regarding extraneous conditions precedent does not apply if the condition precedent is inconsistent with the written instrument or if it would render the instrument ineffective and nugatory. *Walker & Laberge Co. v. Bank*, 206 Va. 683, 146 S.E.2d 239 (1966).

Therefore, the court is of the opinion that Brooks's settlement offer was clear and unambiguous, unbridled by any condition precedent, and was unconditionally accepted by the offeree, Interior Specialty. Brooks's subsequent attempts to redefine the time when the balance of the settlement amount would be paid was ineffective.

Accordingly, the litigation is settled. Brooks owes immediate payment to Interior Specialty in the agreed-upon amount of $43,748.72 less $21,874.34 heretofore paid, upon payment of which the parties will comply with the other provisions of the settlement contained in the four numbered paragraphs of Brooks's July 27th letter. The trial scheduled for January 9, 1995, is removed from the docket.