MERCHANTS NATIONAL BANK &
TRUST COMPANY, Movant,

v.

PROFESSIONAL CONSTRUCTORS,
INC., Respondent.

Supreme Court of Kentucky.

Feb. 6, 1979.

Rehearing Denied May 1, 1979.

Earl S. Wilson, Todd S. Horstmeyer, Lexington, for movant.

William C. Jacobs, Lexington, for respondent.

STERNBERG, Justice.

This appeal involves the priority between a mortgage lien and a materialman's lien. For convenience, the parties will be identified as follows: Carlsberg Income Properties, Ltd., will be referred to as Carlsberg; Dues Development Company will be referred to as Dues; Professional Constructors, Inc., will be referred to as Pro Con; and Merchants National Bank & Trust Company will be referred to as Merchants.

Carlsberg and Dues, working together, were in the process of developing a tract of

land in Fayette County, Kentucky. On February 27, 1974, Dues conveyed the real estate to Carlsberg. In exchange, Carlsberg delivered to Dues a mortgage and a leaseback contract on the subject property. On April 15, 1974, Dues executed and delivered a note to Merchants for $1,125,000. It was secured by a first mortgage lien on the subject real estate and improvements, transfer of Dues' interest in a security agreement, assignment by Dues of its rights under a lease and sales agreement, personal guaranty document by Joseph J. Dues and his wife, Louella, and a construction loan agreement. Thus, the financial structure for the land development was completed. At that time there were no improvements on the land. None had been commenced, nor had any supplies or materials been furnished.

On July 27, 1974, more than three months after the loan had been completed, Dues and Pro Con entered into a written fixed-sum contract for the construction of a multiple purpose warehouse on the subject property. The parties proceeded with extreme caution in making draws from Merchants and in making monthly payments on Pro Con's current account. A program for monthly withdrawals by Dues so as to pay not only Pro Con but other persons who were working on the warehouse was developed. Each month Pro Con would complete an application and certificate for payment, A.I.A. Document G 702, which application showed the amount of work done, by whom, and the charges therefor. This application, together with the necessary affidavits, lien releases and lien waivers, was sent by Pro Con to Dues. Dues would periodically have its personnel check the work completed, but always would make out the checks and forward them to Carlsberg for signature. These checks were made payable to Pro Con or to Pro Con and a supplier or subcontractor, as indicated on the application and other documents. Carlsberg would sign the checks and forward them to the attorney representing Dues. The attorney would then check the application to ascertain that all funds represented to be due and owing were covered by the checks and by lien releases or lien waivers, would search the records of the Fayette County Court Clerk's Office for transfers, liens or other encumbrances, and would contact Merchants to instruct it to transfer the necessary funds to the Dues account to cover the checks. He would then forward a copy of the original of the application to Merchants and update the title insurance policy to the amount covered by the aggregate of the disbursements. Dues made 11 regular monthly draws on the loan, from which it made payments of its account with Pro Con (6/25/74–4/15/75).

For causes not clearly manifest by the record, Dues abandoned the project in the summer of 1975, and Pro Con, without direction of or authority from Merchants to do so, continued construction until the warehouse was structurally completed. At least the warehouse was sufficiently completed that a certificate was issued by the building inspector's office at Lexington, Kentucky, on May 21, 1975, authorizing occupancy of the warehouse.

On August 8, 1975, Merchants declared the note and mortgage in default. On August 15, 1975, Pro Con filed a written statement in the office of the County Court Clerk of Fayette County, Kentucky, against Carlsberg (owner) asserting its right to a materialman's lien on the subject property. This filing was over three months after the last draw had been made and the current obligation paid. On October 3, 1975, Merchants filed suit in the Fayette Circuit Court seeking to recover the unpaid balance due on the note ($955,121.76), with interest, and to enforce its lien rights. Although there were many parties to the action as originally filed, only Merchants and Pro Con remain as litigating parties. The pleadings raise three issues:

1. Had Dues complied with the terms and conditions of the note and security documents?

2. Did Pro Con have a lien superior to that of Merchants?

3. Was Pro Con a third-party beneficiary of the construction loan agreement?

■ Dues failed to comply with the terms and conditions of the loan in at least three instances. First, interest was payable monthly on the amounts advanced, which was not paid. Interest stopped being paid on April 1, 1975. Secondly, the warehouse was required to be ready for occupancy and operation on or before April 15, 1975. It was not. Pro Con did receive a certificate from the building inspector's office on May 21, 1975, that the warehouse could be occupied. Thirdly, Dues abandoned the project. In face of these shortcomings in the construction project, which violated the terms of the mortgage, Merchants was fully justified in accelerating the note and enforcing the terms of the note and mortgage. Dues had not complied with the terms and conditions of the note and security documents.

From our study of the record, we are of the opinion that issues two and three can be answered together.

Pro Con argues that it had a materialmen's lien which was prior and superior to the mortgage of Merchants by reason of the fact that prior to each disbursement Merchants had actual knowledge that Pro Con had labored and furnished materials and that Pro Con had not been fully paid. Additionally, Pro Con asserts that it was a third-party beneficiary of the construction loan agreement and, as such, had an equitable lien.

■ The answer to these issues is twofold. First, Pro Con was dealing with Dues and Carlsberg; it was not dealing with Merchants. Each time that Pro Con was paid, it furnished Dues with a release of lien which provided that all persons involved had been fully paid and that it released Carlsberg, Merchants and Dues from any and all liability, either expressed or implied, and released and waived any and all claims and/or rights or mechanic's liens and equitable lien rights to which Pro Con then had or may have to the date of payment. Pro Con had fully released its lien rights. Secondly, as to the difference in the amount of money actually disbursed and the face amount of the note, there was no disbursement. The money was never placed in Dues' bank account. Bearing in mind that this is a discretionary loan, there was no obligation on Merchants to disburse this sum. Pro Con, by its releases, which were relied upon by Merchants, cannot assert a lien to the sums of money represented by the eleven withdrawals. This does not dispose of the question raised as to the status of the statement of lien filed by Pro Con against Carlsberg on August 15, 1975, and as amended on October 29, 1975.

■ On March 25, 1976, the parties filed a stipulation which, insofar as it pertained to these documents, states as follows:

" * * * By reason of having filed a Statement of Lien in the Fayette County Court Clerk's Office, the Defendant, Professional Constructors, Inc., has a lien on the real property described in Merchants' Complaint and the improvements thereon. Said lien shall secure the amount, if any, due and owing the Defendant, Professional Constructors, Inc., from the Defendant, Dues Development Company, by reason of the aforementioned contract."

Is this lien superior to the mortgage of Merchants?

KRS 376.010(2) provides:

"The lien shall not take precedence over a mortgage or other contract lien or bona fide conveyance for value without notice, duly recorded or lodged for record according to law, unless the person claiming the prior lien shall, before the recording of the mortgage or other contract lien or conveyance, file in the office of the clerk of the county court of the county wherein he has furnished or expects to furnish labor or materials, a statement showing that he has furnished or expects to furnish labor or materials, and the amount in full thereof. The lien shall not, as against the holder of a mortgage or other contract lien or conveyance, exceed the amount of the lien claimed or expected to be claimed as set forth in the statement. The statement shall, in other respects, be in the form prescribed by KRS 376.080."

The mortgage was recorded April 15, 1974, which was sixteen months prior to the recording of the lien statement. Pro Con, as the general contractor, initiated and, as a matter of fact, in its monthly request for payment set forth the names of the persons to whom payments should be made. A retainage of ten percent (10%) of the request was withheld by Merchants. The retainage was not placed in a special fund. It was not withdrawn from the bank, nor was it placed in Dues' bank account in any respect. Merchants learned of the abandonment of the project and made no further distribution. There was no obligation on Merchants to distribute or deposit any money in Dues' account and none was distributed or placed in its account.

Priority of lien may have been established by Pro Con in two ways. First, priority by reason of Merchants having actual notice of such facts as would give Pro Con a lien as each distribution was made. This avenue was abruptly closed when Pro Con at each draw signed a release of lien. Second, priority to the sum of money representing the difference between the amount of money actually disbursed and the face amount of the note. This sum of money never belonged to Dues as there had been no request for payment or transfer, nor, as a matter of fact, had any of these funds been transferred from Merchants' account to Dues' account. This being a discretionary loan, the undistributed funds did not constitute a part of the loan until actual distribution had been made. In other words, as distribution was made, the amount distributed became a part of the debt secured by the mortgage.

The decision of the Court of Appeals of Kentucky is reversed, and the judgment of the Fayette Circuit Court is affirmed.

All concur.