# Richmond.

## MASON MATHEWS AND G. T. THAYER, TRUSTEES v. J. W. MEYERS, ET ALS.

November 15, 1928.

Absent, Chichester, J.

The opinion states the case.

*J. M. Perry*, for the appellants.

*R. B. Stephenson* and *C. C. Collins*, for the appellees.

HOLT, J., delivered the opinion of the court.

On October 30, 1926, the plaintiffs sold to J. W. Meyers, C. N. Scott and C. J. Bollin the standing timber on a tract of land in Alleghany county, estimated to contain 5,678 acres, which tract was made up of eight smaller tracts. The consideration therefor was

$45,000.00, of which $10,000.00 was paid in cash and the remainder was evidence by purchase money notes which fell due in installments, and which were secured by a trust deed to C. P. Barnett, trustee, of even date. Both of these deeds were promptly recorded.

In the deed of trust it was provided that the purchasers should have the right to cut and remove timber, and that they should pay therefor $50.00 per thousand feet, to be credited on the balance due on account of their purchase, and were to account therefor on or before the tenth of each month succeeding each operation; and that the right to operate should cease and determine whenever they were in default. These purchasers chartered an operating company, known as the Dunlap Creek Lumber Corporation. Their purchase was transferred to this corporation by a deed which was not recorded, and which appears to have been lost.

This corporation began work and cut something like 500,000 feet of lumber, but failed to render any account of its transactions, or to make the payments which they called for.

These facts were set up in the bill in this cause, and in accordance with its prayer an injunction issued, a receiver was appointed, and a commissioner in chancery was directed to report liens and the order of their priority. This he did. These liens fell into three classes—labor liens, purchase money still due and certain other claims set up by attachment. The commissioner was of opinion that these labor liens constituted a first charge on this manufactured lumber.

Certain exceptions were filed, and on them the court entered this order: "Upon consideration whereof the said exception, filed by A. L. Hoke *et als.*, is overruled, and the exception number one, filed by Mathews and

Thayer, trustees, be and is hereby overruled, and exception number two, filed by Mathews and Thayer, trustees, is sustained, and the court doth decide that in so far as said report of the said commissioner fails to give the said Mathews and Thayer, trustees, a lien of $5.00 per thousand board measure second in priority to the said lien creditors upon the manufactured lumber and logs, the same is erroneous and in every other particular the said report is ratified, approved and confirmed; and it appearing to the court from said report that the said Mathews and Thayer, trustees, have a first lien on the standing timber, it is adjudged, ordered and decreed that said lien for the purchase money on said standing timber be and is hereby fixed and ascertained to the amount of the unpaid purchase money as ascertained in said report; and it further appearing from the said report that there is manufactured lumber and logs and other personal property which has been sold by the receiver in this cause, it is adjudged, ordered and decreed that the labor lien creditors as ascertained in said report are entitled to a first lien on all of said manufactured lumber and logs and other personal estate, except as follows:   *   *.''

That part of the labor lien statute under construction is found in section 6438 of the Code, as amended by Acts of 1922, page 13, which provides that laborers ''shall have a prior lien on the franchises, gross earnings, and all the real and personal property of said company which is used in operating the same.''

█ In the construction of a statute, it is of primary importance to remember its purpose.

Judge Burks, in Burks' Pl. & Pr. (2d ed.), at section 430, said: ''A development of this common law lien, by which the workman was permitted to retain possession of the chattel, which had been increased in value

by his labor and material, has produced statutes providing for mechanics' liens in every State of the Union, in the provinces of Canada, and in the District of Columbia. If the workman was permitted to follow his labor and material into the chattel that he had created, or had given value to, why could not the workman and the material-man be permitted to follow his labor and supplies into the buildings and structures, which owed their value to the industry and the material that had created the buildings and structures. If the workman might retain possession of the chattel, and so give notice to the world of his claim, preventing frauds and deceptions on purchasers and creditors, could not the resources of the law devise some method as to a subject matter not admitting of possession, by which notice of the lien might be given to the world, and thus prevent frauds on purchasers and creditors?''

In the nature of things those who work for corporations seldom have possession of the products of their labor, and unless this statutory lien attaches to them, the remedy designated by the legislature for their protection is in most instances but a shadow.

When we come to construe the statute in judgment, we find this to be the rule which our court has adopted: "An examination of outside authorities shows that there exists a hopeless diversity of opinion as to whether mechanics' lien statutes should receive a liberal or strict construction. We believe the correct rule deducible from the language and purposes of our statute and the decisions of this court with respect to it is that there must be a substantial compliance with the requirement of that portion of the statute which relates to the creation of the lien; but that the provisions with respect to its enforcement should be liberally construed.'' *Francis* v. *Hotel Rueger*, 125 Va. 106, 99 S. E. 690.

Of course, all that has been said about mechanics' liens applies *mutatis mutandis* to labor liens.

Roughly speaking, the work done by these laborers consisted in logging the mill, sawing the lumber, and removing and stacking it. All of this creates value, produces in the end gross earnings, and so the lien attaches, whether we are dealing with logs, lumber or proceeds of sale.

In reply, it is said that although the logs may be used in the operation of the mill, the sawed lumber is not and that the operation on this completed product is over. That it is over, as a physical fact, is of course true; but this product is a part of what has been earned. When sold, the lien, in the very language of the statute, attaches. Proceeds of sale are "gross earnings," and there would be no logic in holding that the lien died when the log was sawed, but was revived when sold in its converted form. The lumber in any form is liable if the proceeds of its sale are, and no one has questioned the fact that proceeds of sale are gross earnings.

It is true that "the prior lien given by section 2485 of the Code of Virginia [1887] to the employees of transportation companies and mining and manufacturing companies, on all the real and personal property of such companies, and over which no mortgage, deed of trust, etc., can take precedence, attaches only to the interest in its property acquired by the company which employed the claimants, and takes precedence only over mortgages, etc., made by it; and where such company has purchased property already subject to incumbrances made by the former owner, or has given a purchase-money mortgage, such incumbrances are not displaced by the employees' liens." Head note, *M. A. Furbush & Son Mach. Co.* v. *Liberty Woolen Mills* (C. C.), 81 Fed. 425.

In the cause in judgment, however, both the deed and trust deed permitted this work to be done. It was in the interest of the plaintiffs as well as of the defendants, for by it they were to be paid. This was a matter of record, and these laborers had the right to assume that there had been no default since the operation had been carried on without protest. There had been here no impairment of any obligation of contract.

██ This cross-assignment of error is relied upon: "The said labor lien creditors claimed a lien on the standing timber which was conveyed by the appellants to Meyers, Scott and Bollin, and by them to the said lumber corporation, and exception was made to the commissioner's report upon the ground that the labor lien creditors should have priority over the deed of trust lien of appellants as to said standing timber. We assign this as cross-error, and insist that section 6438 of the Code, in its provision that no mortgage deed of trust, sale, hypothecation of conveyance shall take precedence over the labor lien creditors, applies here, and we rely upon the following authorities:"

It is without merit. *Furbush and Sons Mach. Co.* v. *Liberty Woolen Mills, supra,* and *Citizens & Marine Bank* v. *Mason* (C. C. A.), 2 Fed. (2d) 352.

Other collateral matters were urged in argument, but we deem it unnecessary to discuss them. It may be said in passing, that nothing in *Boston Blower Co.* v. *Carman Lumber Co.,* 94 Va. 94, 26 S. E. 390, conflicts with the views here expressed. That case merely held that a dry kiln was not "supplies necessary to the operation" of a saw mill. The net results of our conclusions are that these labor liens are first liens upon this sawed lumber or its proceeds. If there is anything left after they are paid from this source, plaintiffs take it. Upon the residue of the property conveyed by the

deed of October 30, 1926, the plaintiffs have a first lien for the balance due them on account of sales price. No complaint has been made as to the status of the attachment creditors, and the decree as to them stands.

The decree appealed from must be affirmed, and it is so ordered.

*Affirmed.*