UNITED MASONRY INCORPORATED OF VIRGINIA

v.

RIGGS NATIONAL BANK OF WASHINGTON, D.C.

Record No. 840090

UNITED MASONRY INCORPORATED OF VIRGINIA

v.

RIGGS NATIONAL BANK OF WASHINGTON, D.C., ET AL.

Record No. 850187

June 12, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Cochran, Retired Justice

*Robert K. Richardson (Odin, Feldman & Pittleman, P.C.*, on brief), for appellant. (Record No. 840090)
*David G. Lane (Stephen J. Johnson; Lewis, Mitchell & Moore*, on brief), for appellee. (Record No. 840090)
*Robert K. Richardson (Odin, Feldman & Pittleman*, on briefs), for appellant. (Record No. 850187)
*Stephen J. Johnson; Frank E. Brown, Jr. (David G. Lane; Lewis, Mitchell & Moore; Tolbert, Smith, Fitzgerald & Stackhouse*, on briefs), for appellees. (Record No. 850187)

STEPHENSON, J., delivered the opinion of the Court.

United Masonry Incorporated of Virginia (United Masonry) was a general contractor on a townhouse project in the Council Square II Subdivision in the town of Vienna. Wedgefield Corpora-

tion (Wedgefield) owned the project. Riggs National Bank of Washington, D. C. (Riggs), was the construction lender for the project; its construction loan was secured by a deed of trust on the entire project. Pursuant to the building loan agreement between Wedgefield and Riggs, Wedgefield engaged a title insurance company, Chicago Title Insurance Company (Chicago Title), to provide insurance to Riggs. When Wedgefield defaulted, Riggs became the owner of the project through foreclosure. In these appeals, United Masonry contends that the trial court erred in ruling that United Masonry (1) failed to timely file certain mechanics' liens (Record No. 840090); and (2) waived its right to claim certain other mechanics' liens (Record No. 850187).

I
*Whether Certain Mechanics' Liens Were Timely Filed.*
*(Record No. 840090).*

United Masonry and Wedgefield entered into three written contracts. The first contract, dated March 18, 1980 (the March contract), provided for masonry and concrete work and materials on Lots 1 through 19 of the subdivision. The second contract, dated September 8, 1980 (the September contract), provided for the construction of a brick boundary wall for the development. The third contract, dated October 6, 1980 (the October contract), was for labor and materials on Lots 20 through 23 and 39 through 49.

United Masonry commenced construction pursuant to the March contract in March or April 1980 and completed this work no later than October 1980. Work under the September contract was begun in September or October 1981 and terminated in November 1981. Construction pursuant to the October contract commenced on Lots 46 through 49 in February 1981 and was completed in July 1981; construction began on Lots 20 through 23 in April and May 1981 and ended in September 1981.

On June 22, 1982, United Masonry filed memoranda of mechanics' liens, claiming separate liens on Lots 1 through 12, 14, 17, and 18 in the total amount of $60,673.45; a blanket lien on Lots 20 through 23 in the amount of $51,745.35; a blanket lien against Lots 46 through 49 in the amount of $40,920.65; and a lien on the brick wall for $2,979.21.

On September 3, 1982, United Masonry sued to enforce its liens. This appeal challenges the trial court's grant of a partial summary judgment in favor of Riggs whereby the court ruled that

the mechanics' liens claimed by United Masonry on Lots 20 through 23, 46 through 49, and the brick wall were not timely filed.

Prior to its amendment in 1980, Code § 43-4 provided that "[a] general contractor, in order to perfect [his] lien . . . , shall file [a memorandum] at any time after the work is done and the material furnished by him and before the expiration of ninety days from the time such building, structure, or railroad is completed, or the work thereon otherwise terminated . . . ." Effective July 1, 1980, Code § 43-4 provides that "[a] general contractor, . . . in order to perfect [his] lien . . . , shall file [a memorandum] at any time after the work is commenced or material furnished, *but not later than ninety days from the last day of the month in which he last performs labor or furnishes material* . . . ." (Emphasis added.) Thus, the 1980 amendment makes the filing deadline dependent upon each contractor's own activity and no longer permits a contractor to rely upon work performed by others to extend the filing time.

Amended Code § 43-4 further provides, however, that:

> The time limitations set forth herein shall apply to all labor performed or materials furnished on *construction commenced* on or after July 1, 1980. As to any labor performed or materials furnished or *construction commenced* prior to July 1, 1980 the lien claimant shall file at any time after the work is done and the material furnished by him and before the expiration of ninety days from the time such building, structure or railroad is completed or the work thereon otherwise terminated.

(Emphasis added.)

Resolution of the issue in this appeal turns upon the meaning given to the term "construction commenced." United Masonry contends that the term should be construed to mean construction commenced by anyone on the overall townhouse project irrespective of when United Masonry commenced construction. Riggs, on the other hand, contends that the term means construction commenced by the lien claimant, United Masonry, under the contract that entitles the claimant to a lien.

The trial court found that United Masonry and Wedgefield were operating under "three separate contracts, entered into on

separate dates with separate consideration;" none of the contracts was "tie[d] . . . to the other," and there was "no reason why the work could not have been done by three separate contractors."[1] Based upon its finding that there were three separate contracts, the court concluded that because construction commenced under the September and October contracts *after* July 1, 1980, the new filing requirements under present Code § 43-4 controlled; thus, the liens claimed on the brick wall and on Lots 20 through 23 and 46 through 49 were time-barred. We agree.

■ At the outset, we note that the General Assembly is presumed to have acted with full knowledge of the law of mechanics' liens when it amended Code § 43-4. *See Cape Henry* v. *Natl. Gypsum*, 229 Va. 596, 600-01, 331 S.E.2d 476, 479 (1985). A mechanic's lien, although a statutory creation, necessarily has its foundation in a contract, *see Sergeant* v. *Denby*, 87 Va. 206, 208, 12 S.E. 402, 402 (1890), and it is a contractor's performance under the contract that gives rise to the inchoate lien, *see Hadrup* v. *Sale*, 201 Va. 421, 425, 111 S.E.2d 405, 407 (1959); *Weaver* v. *Harland Corporation*, 176 Va. 224, 230, 10 S.E.2d 547, 549 (1940).

In determining which contractors were subject to the new filing requirements of Code § 43-4, the General Assembly expressly provided that "[t]he time limitations . . . shall apply to all labor performed or materials furnished on construction commenced on or after July 1, 1980." We conclude that the General Assembly intended to apply the new filing requirements to a contractor who, on or after July 1, 1980, commenced construction under a contract that entitled him to a lien.

■ Here, Wedgefield did not engage United Masonry in a single contract to furnish all masonry and concrete labor and materials for all units in the Council Square II development. Had Wedgefield and United Masonry entered into one contract covering the entire development and construction had commenced

---

[1] United Masonry claims on appeal that this finding ignores a dispute of material fact about whether United Masonry commenced construction prior to July 1, 1980, pursuant to one oral, overall agreement with Wedgefield to perform all the masonry and concrete work on the project. United Masonry did not allege such an "overall agreement" in its bill to enforce its liens. Instead, it expressly alleged the written contracts. "No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed." *Potts* v. *Mathieson Alkali Works*, 165 Va. 196, 207, 181 S.E. 521, 525 (1935). We conclude, therefore, that the trial court did not err in finding that there were three separate written contracts.

under such contract prior to July 1, 1980, the result may have been different. Instead, Wedgefield contracted for labor and material in phases, *i.e.*, piecemeal. Each of the three contracts represented an independent undertaking for separate and distinct compensation. *See Richmond College* v. *Scott-Nuckols*, 124 Va. 333, 336, 98 S.E. 1, 2 (1919) (contracts for a single sewer and water system let to same contractor at three separate times, for separate consideration, and without reference to the other contracts in any one contract, were independent, not interdependent agreements).

Construction under the September and October contracts was not commenced until after July 1, 1980; indeed, the parties did not even enter into these contracts until after that date. Because United Masonry did not begin construction under the September and October contracts until after July 1, 1980, the filing requirements of present Code § 43-4 apply, and the liens claimed for labor and materials furnished under those contracts were not timely filed.

## II
### *Partial Lien Waivers.*
### *(Record No. 850187).*

United Masonry claims mechanics' liens securing the payment of a balance due by Wedgefield in the amount of $55,447.15 for labor and material it furnished to Lots 1 through 11 prior to September 26, 1980. Riggs filed a second motion for partial summary judgment, asserting that United Masonry had waived these liens. The trial court granted the motion and entered summary judgment for Riggs. The dispositive issue in this appeal is whether there was consideration for the partial lien waivers that United Masonry executed.[2]

Pursuant to its construction loan commitment to Wedgefield, Riggs agreed to provide advances on its loan so Wedgefield could pay its contractors at various stages of construction. Riggs, however, required title insurance providing affirmative coverage against mechanics' liens. Chicago Title, in turn, conditioned its extension of coverage for each loan advancement upon receipt of

---

[2] We agree with the trial court's conclusion that the waivers are clear and unambiguous. Thus, we reject United Masonry's contention that the trial court erred in refusing to consider parol evidence. *See Shevel's, Inc.* v. *Southeastern Assoc.*, 228 Va. 175, 182, 320 S.E.2d 339, 343 (1984).

adequate lien waivers. Upon receipt of these waivers, Chicago Title would confirm that insurance was extended to cover a proposed advance and authorize disbursement. When such insurance coverage was confirmed, Riggs would disburse the approved amount to Wedgefield, who in turn made payments to its contractors.

United Masonry executed five partial lien waivers covering all labor and material furnished to Lots 1 through 11. Each waiver is directed "TO: (1) CHICAGO TITLE INSURANCE COMPANY (2) Wedgefield Corporation (3) The Riggs National Bank" and contained the following language:

> THE UNDERSIGNED, for and in consideration of the sum of _____ [the amount of money actually received by United Masonry was inserted] and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby waive and release any and all liens or claims of right of lien under the statutes of the State of Virginia relating to mechanics' liens on the aforementioned property and improvements thereon, and on the monies or other consideration due or to become due from the general contractor on account of labor or services, material, fixtures or apparatus heretofore furnished prior to _____ [the dates inserted on United Masonry's releases were April 25, 1980, May 25, 1980, July 25, 1980, September 26, 1980 and September 25, 1980].

United Masonry knew that its waivers were an integral part of the disbursement procedure established by Wedgefield, Riggs, and Chicago Title for financing the construction of the townhouse project. Indeed, each waiver contains the following provision:

> IMPORTANT NOTE: As a condition for rendering the attached check payable to your order, the *lender and title insurance company* require your execution of this Release of Liens without modification thereto.

> Please return completed form to the above listed office of Chicago Title Insurance Company. *Future payments* are contingent upon prompt return of this executed release form.

(Emphasis added.)

Although the amount recited in each waiver was actually paid to United Masonry, that amount was less than the sum due and owing for the period of time covered by the waiver. Wedgefield never paid United Masonry in full, and judgment was rendered against Wedgefield in the amount of $156,319.56. Riggs instituted foreclosure proceedings under its deed of trust and was the foreclosure purchaser.

United Masonry contends that "a partial lien waiver, executed during the course of construction, when only partial payment of the amount then due is being made, is enforceable only to the extent of the amount paid in return for the execution of the lien waiver, absent detrimental reliance on the entire waiver." United Masonry argues that because Riggs was not directly involved in the process of obtaining the waivers, Riggs did not rely upon the waivers to its detriment; thus, the waivers are unenforceable as to the amounts remaining unpaid.

Riggs contends that United Masonry's detrimental reliance argument is "too narrow." Riggs contends, to the contrary, that consideration for the waiver can be the inducement to the lender to make loan advancements to the owner.

Chicago Title asserts that the waivers are supported by consideration. Alternatively, it argues that even if there were no consideration, the waivers are enforceable because Chicago Title relied upon them to its detriment.

■ Although a person entitled to a mechanic's lien may waive that right in whole or part, Code § 43-3(c), the general rule is that an agreement to waive or release a mechanic's lien must be supported by consideration to be valid and binding. *See Walker & LaBerge Co. v. Bank*, 206 Va. 683, 688, 692, 146 S.E.2d 239, 243, 245-46 (1966). *See generally*, 53 Am. Jur.2d *Mech. Liens* § 292 (1970 & Supp. 1986); 57 C.J.S. *Mech. Liens* § 223 (1948 & Supp. 1986). Sufficient consideration exists if the promisee is induced by the waiver to do something that he is not legally bound to do or refrains from doing anything he has a legal right to do, or if the promisee acts in reliance upon the waiver to his detriment. *See Walker & LaBerge Co.*, 206 Va. at 688, 692, 146 S.E.2d at 243, 245-46; *Sussel Co. v. First Fed. S. & L. Ass'n of St. Paul*, 304 Minn. 433, 435, 232 N.W.2d 88, 90 (1975). *See also AMFAC Distribution Corp. v. J. B. Contractors*, 146 Ariz. 19, 26, 703 P.2d 566, 573 (1985); *Merchants Nat'l. Bank & Trust*

*Co.* v. *Professional Constructors, Inc.,* 579 S.W.2d 100, 102 (Ky. 1979).

■ In this case, United Masonry executed waivers in which it expressly agreed to waive all lien rights acquired for work and materials furnished prior to a specified date. Clear language on the face of the waivers shows that the waivers ran in favor of Riggs and Chicago Title and that both the lender and title insurance company required execution of the waivers as a condition for rendering the subject payment as well as for making future payments. The waivers contain no language limiting their enforceability to the extent of the amounts actually paid. *Cf. Bank of Martinsville* v. *Ford,* 219 Va. 942, 945-46, 252 S.E.2d 354, 356-57 (1979) (subcontractor who expressly waived liens "only to the extent of the payments specified" did not waive right to file a lien for sums due as of the date each waiver was signed).

■ In exchange for and in reliance upon United Masonry's waivers of all its lien rights acquired to a certain date, Chicago Title increased its liability under the policy by the amount of the construction loan advance, insured Riggs against all unfiled mechanics' liens as of the effective date of the waivers, and assured Riggs that it could disburse the funds to Wedgefield. Relying upon Chicago Title's assurance that it had proper lien waivers in hand and that insurance would be issued against all unfiled mechanics' liens, Riggs disbursed the funds.

Clearly, therefore, United Masonry received consideration for its waivers. Had it refused to execute the waivers, Chicago Title had no obligation to issue title insurance and Riggs was under no obligation to disburse funds for United Masonry's benefit. The cash payments that United Masonry received, coupled with the inducement to Riggs and Chicago Title to continue construction advances, constituted sufficient consideration for the waivers.

Accordingly, the judgments of the trial court will be affirmed.

*Record No. 840090 — Affirmed.*
*Record No. 850187 — Affirmed.*