# American Standard Homes Corporation

## v.

# Ralph Reinecke, Trustee, et al.

Record No. 920242

# Ralph Reinecke, Trustee, et al.

## v.

# American Standard Homes Corporation

Record No. 920254

January 8, 1993

Present: Carrico, C.J., Compton, Whiting, Lacy, Hassell, and Keenan, JJ., and Poff, Senior Justice

*Ann T. Burks (Charles F. Sievers; Hunton & Williams; Smith and Davenport*, on briefs), for appellant. (Record No. 920242)

*John S. Stump (Joseph W. Wright, III; David Hugh Boyd; McGuire, Woods, Battle & Boothe*, on brief), for appellees. (Record No. 920242)

*John S. Stump (Joseph W. Wright, III; David Hugh Boyd; McGuire, Woods, Battle & Boothe*, on briefs), for appellants. (Record No. 920254)

*Ann T. Burks (Charles F. Sievers; Hunton & Williams; Smith and Davenport*, on brief), for appellee. (Record No. 920254)

SENIOR JUSTICE POFF delivered the opinion of the Court.

These two appeals challenge selected portions of a decree entered in a chancery cause consolidating 27 bills of complaint to enforce mechanic's liens. One suit was withdrawn below.

In six suits, the issue raised on appeal is whether the furnishing of replacement materials under a purchase order and invoice, more than 90 days after the last day of the month in which the materials

required by a materialman's contract with an owner-developer were furnished, advances the materialman's right to perfect a mechanic's lien for the debt due under that contract. With respect to the other 20 suits, the parties agree that the memoranda of liens were timely filed.

In each of the 26 suits, the parties frame two additional questions, that is, (a) whether a materialman's right to a mechanic's lien includes interest on the unpaid cost of materials furnished at a rate fixed in its contract in excess of the legal rate, and (b) whether that right includes attorney's fees for collection of the debt as provided in the contract.

In 1983, American Standard Homes Corporation (American Standard), a manufacturer of prefabricated homes, entered into a basic contract to sell C.D.H. Corporation (CDH) a number of different model homes for erection on lots located in several subdivisions. The price of each model and that of any accessory or extra parts required to adapt a chosen model to a particular site or customer preference was set out in the general contract. For each new project, the parties entered into a "material order contract". This second contract designated the model and listed the "extras" required. In that contract, CDH agreed to pay interest on any debt delinquent for more than 30 days at an annual rate of 18% and "all expenses incurred in collecting same, including 25% attorney's fees." The material order contract also provided:

> This is THE COMPLETE AGREEMENT BETWEEN THE PARTIES. There are no written or oral agreements or understandings directly or indirectly connected with this agreement that are not incorporated herein unless they are put in writing, signed by the parties and attached hereto.

In the summer of 1983, American Standard began delivery of the homes CDH ordered. Each was shipped in two separate packages of materials including the "extras" listed in the material order contract. The first, a "dry-in" package, contained structural units such as walls, roof components, and staircases. The second, a "trim" package, included cabinets, appliances, and similar items. American Standard billed CDH upon delivery of each package.

Shortly after the first of the year 1984, CDH discontinued operations, leaving 49 homes in different stages of completion. American Standard filed memoranda of mechanic's liens against 27 properties

in January and February and, in April and May, suits to enforce those liens. The chancellor consolidated those suits and suits filed by other lien claimants and referred the cause to a commissioner in chancery.

The commissioner conducted hearings in 1985 and 1986 and, with the consent of the parties, considered the deposition of Irvin L. Davis, Jr., American Standard's credit manager, in lieu of his *ore tenus* testimony. That deposition and exhibits introduced in evidence show that, pursuant to "purchase orders" made by CDH and invoices issued by American Standard, certain materials were delivered to each of six projects more than 90 days after the materials and "extras" designated in the respective material order contracts had been delivered.

In the court below, the complainant contended that the 90-day time limitation for filing memoranda of mechanic's liens prescribed by Code § 43-4 did not begin to run until the last day of the month in which the additional materials were delivered. The respondents took the position that the time limitation began to run upon delivery of the materials designated in the material order contracts and, hence, that the filing of the memorandum of mechanic's lien in each of the six cases was untimely.

In a report filed in April 1991, the commissioner found:

> There were instances in some of these cases wherein a written contract was fulfilled and thereafter, more than 90 days from the end of the month in which the final delivery under the contract was made, it was discovered that some of the items, after delivery, had been lost, damaged or stolen and these specific items were reordered. In such cases the defense has taken the position that the lien was lost on the original order.

> However, your Commissioner takes the view that the fulfillment of the contract had no bearing on the time within which the lien could be preserved. [T]he furnishing of the replacement materials advanced the date on which materials were last delivered and thus the date on which the lien could be claimed was advanced and . . . thus the original order could be claimed in the lien.

The commissioner also found that the several mechanic's liens to which American Standard was entitled included interest on the debt

at the rate of 18% per annum, but no attorney's fees. In a final decree entered November 26, 1991, the chancellor overruled all exceptions filed by the parties, confirmed the commissioner's report, and held that all of American Standard's 26 liens were enforceable.

A group of 29 parties to the consolidated cases, including owners of lots affected by American Standard's mechanic's liens and trustees or beneficiaries of deeds of trust recorded on those lots (collectively, Reinecke), filed a petition for appeal challenging the ruling that American Standard's memoranda of mechanic's liens in six cases were timely filed and that all 26 liens included interest at 18% per annum. American Standard filed a petition for appeal challenging the ruling denying its claim for attorney's fees. We granted both petitions and consolidated the appeals, and we will consider these questions in sequence.

## I. REVIVAL OF LIEN

■ The chancellor adopted and applied the commissioner's conclusions that the materials delivered under the purchase orders were materials last furnished within the intendment of the perfection statute and, hence, that the six liens were timely filed. While we accord a chancellor's findings of fact great weight, we are not bound by his applications of principles of law to those findings. "The rule of law with reference to the weight to be given to the findings of the commissioner, where the evidence taken before him is conflicting, can hardly have any application to this case where the conclusion is entirely one of law." *Sterling* v. *Trust Co.*, 149 Va. 867, 876, 141 S.E. 856, 858 (1928); *accord Morris* v. *United Virginia Bank*, 237 Va. 331, 338, 377 S.E.2d 611, 614 (1989); *Hill* v. *Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 296 (1984).

■ Insofar as relevant to the six cases in issue, Code § 43-4 (Repl. Vol. 1990) as written when the commissioner filed his report provided:

A general contractor, or any other lien claimant . . ., in order to perfect the lien given by § 43-3, shall file . . . not later than ninety days from the last day of the month in which he last . . . furnishes material . . . a memorandum showing . . . the amount and consideration of his claim, and the time or times when the same is or will be due and payable, verified by the oath of the claimant . . . .

A lien created by Code § 43-3 is one in derogation of the common law. Once perfected in accordance with § 43-4, the lien can be enforced by suit brought as provided in §§ 43-17 and -22. In Virginia provisions of the enforcement statutes are to be construed liberally while the requirements of the perfection statute are to be construed strictly.

[T]here exists a hopeless diversity of opinion as to whether mechanics' lien statutes should receive a liberal or strict construction. We believe the correct rule, deducible from the language and purposes of our statute and the decisions of this court with respect to it is, that there must be a substantial compliance with the requirement of that portion of the statute which relates to the creation of the lien; but that the provisions with respect to its enforcement should be liberally construed.

*Francis, et als.* v. *Hotel Rueger*, 125 Va. 106, 121, 99 S.E. 690, 694 (1919); *accord Rosser* v. *Cole*, 237 Va. 572, 576, 379 S.E.2d 323, 325 (1989); *Mathews* v. *Meyers*, 151 Va. 426, 430, 145 S.E. 352, 354, (1928); *Clement* v. *Adams Bros.-Paynes Co.*, 113 Va. 547, 553, 75 S.E. 294, 296 (1912). ''[U]nless [a mechanic's lien] is perfected within the proper time and in the proper manner, as outlined by the statute, it is lost.'' *Wallace* v. *Brumback*, 177 Va. 36, 40, 12 S.E.2d 801, 802 (1941); *accord United Masonry, Inc.* v. *Riggs National Bank*, 233 Va. 476, 480, 357 S.E.2d 509, 512 (1987); *Furst-Kerber Cut Stone Co.* v. *Wells*, 116 Va. 95, 99, 81 S.E. 22, 24 (1914); *Trustees Franklin Street Church* v. *Davis*, 85 Va. 193, 194-95, 7 S.E. 245, 246 (1888).

On brief, American Standard argues that the material order contracts ''were open ended devices'' and that, because ''each contract contemplates both extras and multiple purchase orders'', the materials acquired under purchase orders were, for purposes of the filing limitation prescribed by the perfection statute, materials last furnished under those contracts.[1]

---

[1] American Standard also contends that the requirement in the perfection statute that the memorandum of lien show ''the time or times when the [debt] is or will be due and payable'' evinces legislative intent to include all materials, whenever supplied by a lien claimant, within the concept of ''materials last furnished'' under a materialman's contract. As we understand the purport of that language, it simply contemplates the possibility that the payment due date (as distinguished from the delivery date) on materials furnished pursuant to the contract may post-date the filing of the memorandum of lien.

We disagree. Each material order contract contained blank spaces beneath the word "Extras" in which CDH listed the materials to be added to those designated in the "dry-in" and "trim" packages. It is true, as American Standard says, that the contract also contemplated that "[a]ll 'Extras' will be shipped C.O.D. [under] purchase orders [that] must be signed and received by the Company prior to delivery." However, unlike the "Extras" listed in the material order contracts and included in the invoices issued when the two material packages were delivered, the "Extras" to be shipped C.O.D. under particularized purchase orders were articles the commissioner's report characterized as "replacement materials" for those materials that "after delivery, had been lost, damaged or stolen and . . . were reordered."

    Neither the basic contract nor the material order contract required CDH to purchase such "extras" from American Standard; CDH was free to contract with other materialmen for materials needed to replace those delivered earlier by American Standard. In its purchase orders, CDH offered to buy replacement parts from American Standard. American Standard accepted that offer by delivering the materials.

In our view, this was a contract, one separate and apart from the material order contract. The latter expressly provided that it was "THE COMPLETE AGREEMENT BETWEEN THE PARTIES." When American Standard delivered the materials designated and the extras listed in that contract, it delivered all it had contracted to deliver. What it delivered under that contract were the materials last furnished within the intendment of the 90-day statutory limit for filing a memorandum of mechanic's lien. *See Loan Association* v. *Kendall Company*, 205 Va. 136, 148, 135 S.E.2d 178, 187 (1964) (work performed under contract with trustees committed to finish project abandoned by owner does not extend statutory time limit for filing memorandum of lien for work performed under contract with owner).

    The record shows that, with respect to each of the six liens in issue, the limitation period had expired before American Standard filed its memoranda. If we were to adopt American Standard's contention, the time limitation for perfecting a materialman's lien would never begin to run as long as the materialman could close

another sale of replacement materials with the other party to his contract.[2]

■ We hold, therefore, that the chancellor erred in confirming the commissioner's finding that "the furnishing of the replacement materials advanced the date . . . on which the lien could be claimed". Because liens for the materials furnished under the material order contract in these six cases were never perfected within the time prescribed by Code § 43-4, they were unenforceable. Accordingly, we will reverse that part of the decree that held otherwise.

## II. INTEREST RATE ON THE DEBT

We consider next whether, in the 20 cases in which American Standard's memoranda of mechanic's liens were filed timely, the chancellor erred in allowing interest in excess of the legal rate on the debts underlying those liens.

As we have noted, American Standard's contract with CDH provided for interest on delinquent debts at an annual rate of 18%. Confirming the commissioner's report, the chancellor enforced those liens with interest at the contract rate.

Noting on appeal that "neither § 43-3 nor § 43-4 addresses interest", Reinecke argues that "interest in excess of the legal rate may not be added to a mechanic's lien". Our analysis of statutory and case law requires us to reject that argument.

Code § 6.1-330.53 (Repl. Vol. 1988) provides that "[t]he legal rate of interest shall be an annual rate of eight percent."[3] That statute further provides that "the legal rate of interest shall be implied where there is an obligation to pay interest and no express contract to pay interest at a specified rate." The legal rate is the judgment rate, "except that a money judgment entered in an action arising from a contract shall carry interest at the rate lawfully charged on such contract, or at [the legal rate], whichever is higher." Code § 6.1-330.54 (Repl. Vol. 1988).

---

[2] Discounting that concern and citing *Stickney* v. *Murdock Steel & Engineering, Inc.*, 212 Kan. 653, 512 P.2d 339 (1973); *Akers & Co.* v. *Weil*, 251 Ky. 689, 65 S.W.2d 712 (1933); *Walsh-Anderson Co.* v. *Keller*, 139 Mont. 210, 362 P.2d 533 (1961), American Standard asks us to adopt a "good faith" rule. We decline the request. To adopt such a view would violate our rule of strict construction and distort the terms of the perfection statute.

[3] At the time the commissioner's report was filed, the legal rate was six percent. Code § 6.1-330.9 (Repl. Vol. 1983).

■ Consonant with the letter and spirit of these statutes, we have said:

> The legal rate of interest applies only in the absence of a lawful contract rate. Where a specified rate of interest is contracted for upon an obligation, and the rate is lawful, that rate will continue to apply after maturity of the obligation, and even after judgment, until the debt is fully paid. The reason for this is the court's lack of power to dispense with the obligations of lawful and valid private contracts.

*Fleming* v. *Bank of Virginia*, 231 Va. 299, 307, 343 S.E.2d 341, 345 (1986) (citations omitted) (upholding contractual rate of 15.673%).[4] "Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed." *The Bank of Southside Virginia* v. *Candelario*, 238 Va. 635, 640, 385 S.E.2d 601, 603 (1989).

"That policy is unobjectionable [Reinecke says] when applied as between the parties who so agreed." Reinecke reasons that "[m]echanics liens . . . displace or 'prime' the rights of deed of trust holders and other creditors with lien rights" and, consequently, that "where the interests of lenders and other strangers to the contract of the laborer or materialman are adversely affected, the interest rate at which a mechanic's lien may be enforced should not exceed the legal rate."

With the statutes we have cited in mind, we turn to the statutes governing the perfection and enforcement of mechanic's liens. Those statutes clearly contemplate interest on debts subject to lien.

As Reinecke says, Code §§ 43-3 and -4 do not mention interest. However, as structured in Code §§ 43-5, -8, and -10, each of the forms required by the perfection statute to be filed by lien claimants contains a blank beneath the words - "Date from which interest on the above amount is claimed". Once a lien is perfected by filing one of these forms, a claimant who files a bill to enforce is required to "file with his bill an itemized statement . . . showing the amount and character of the work done or materials furnished, the prices

---

[4] The function of interest "is to compensate Plaintiff for the loss sustained by not receiving the amount to which he was entitled . . . and such award is considered necessary to place the [plaintiff] in the position he would have occupied if the party in default had fulfilled his obligated duty." *Marks* v. *Sanzo*, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986) (quoting *Employer-Teamsters, Etc.* v. *Weatherall Concrete*, 468 F. Supp. 1167, 1171 (S.D. W.Va. 1979)).

charged therefor, . . . the balance due, and the time from which interest is claimed thereon''. Code 43-22.

■ In arguing that enforcement of an interest clause in a material-man's contract in excess of the legal rate may ''displace or 'prime' the rights'' of strangers to the contract,[5] Reinecke overlooks the fact that the order of priorities among those entitled to rights in land and improvements put upon land as provided in the mechanic's lien stat-utes is a matter of public policy, one within the exclusive domain of the General Assembly. If the legislature had so intended, it could have excluded interest as an element of a mechanic's lien or limited it to the legal rate. It did neither. Instead, it expressly approved inclusion of interest as an element of the claim in the perfection and enforcement of a mechanic's lien.

■ We think the rate approved by the General Assembly was the rate defined in Code § 6.1-330.54, that is, the rate lawfully charged on a contract or the legal rate, whichever is higher. Accordingly, we hold that, in the 20 cases in which American Standard's liens were timely filed, the Chancellor correctly included interest on the under-lying debts at 18% per annum, and we will affirm that portion of the decree enforcing those liens.

## III. ATTORNEY'S FEES

Finally, we consider the question raised by American Standard whether the chancellor erred in excluding attorney's fees as an ele-ment of the liens enforced by the final decree. We think not.

■ Like interest on delinquent debts, attorney's fees for collec-tion of those debts were part of the consideration binding the con-tract between American Standard and CDH. Standing alone, how-ever, that fact does not resolve the question. The mechanic's lien chapter of the Code provides that ''[t]he remedies afforded by this chapter shall be deemed cumulative in nature and not be construed to be in lieu of any other legal or equitable remedies.'' Code § 43-23.2. Under American Standard's prayer in its bill of complaint for

---

[5] Enforcement of such an interest clause will not adversely affect lenders, title insurance companies, and other ''strangers to the contract'' who avail themselves of the several pro-tective measures available such as hold back provisions in the schedule of loan disburse-ments, periodic title searches, and waivers and releases from potential lien claimants. *See Pioneer National Title Ins.* v. *Cranwell*, 235 Va. 597, 369 S.E.2d 678 (1988); *United Masonry, Inc.* v. *Riggs National Bank*, 233 Va. 476, 357 S.E.2d 509 (1987); *First Am. Title* v. *Seaboard S&L*, 227 Va. 379, 315 S.E.2d 842 (1984).

"such other and further relief as to Equity would be proper", the chancery court had jurisdiction to enter a money judgment enforcing the attorney's fees commitments as legal claims *ex contractu. Stevens* v. *Sparks,* 205 Va. 128, 133, 135 S.E.2d 140, 144 (1964); *accord Carr* v. *Tharp,* 221 Va. 1012, 1016, 277 S.E.2d 167, 169 (1981). Alternatively, American Standard could have pursued its contract remedy in an action at law.

■ As we have said, the General Assembly expressly approved inclusion of interest as an element of the claim in the perfection and enforcement of a mechanic's lien. The legislature was at liberty to do, but did not do, the same for attorney's fees. Because we will not invade the public policy domain of the General Assembly, we will uphold the chancellor's ruling on this issue.

In summary, we will affirm the decree in part, reverse the decree in part, and remand the cause for entry of a new decree in accordance with the views expressed in this opinion.

*Record No. 920242; Affirmed and remanded.*
*Record No. 920254; Affirmed in part,*
*reversed in part,*
*and remanded.*