Jackson Vaughan KISER, Laura
Christine Kiser, Debtors.

Jackson Vaughan Kiser, et ux.,

v.

Russell County, Virginia,
et al., Defendants.

Bankruptcy No. 7–03–00001–WSA–7.
Adversary No. 7–03–00076.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Dec. 2, 2003.

John M. Lamie, Abingdon, VA, for Debtors.

## *MEMORANDUM DECISION*

WILLIAM F. STONE, JR., Bankruptcy Judge.

The issue before the Court is whether a mechanics' lien can be properly perfected against real property held as tenants by the entirety when only one of the owners was listed on the Memorandum of Mechanics' Lien.

## *FINDINGS OF FACT*

Jackson and Laura Kiser ("Kisers") acquired by separate deeds two lots, apparently adjoining, in Russell County as tenants by the entirety with rights of survivorship. The Kisers proceeded to build a house situated on one or both of these lots and purchased material for such purpose from Builders' Supermarket. Builders' Supermarket, shown variously even in its own pleadings and documentation as Builders' Supermarket, Inc., Builder's Super Market, Inc., Builders' Super Market of Abingdon, Inc. and Builder's Super Market, Inc. of Abingdon, Va., extended credit to the Kisers after both Mr. and Mrs. Kiser signed as personal guarantors of the account. Their credit application listed Mr. Kiser as the customer and in a separate section designated as "Principal Owners", Mr. Kiser's name was listed as "Vaughan" and "Laura" (Mrs. Kiser) as "spouse's name". It is not clear from the form whether a spouse who is also a co-owner should be also or instead listed as a co-owner. The building permit for the construction obtained from Russell County indicated that Mr. Kiser was the owner. By signing the permit application Mr. Kiser certified that the information contained therein was correct and complete to the best of his knowledge, that the proposed work was authorized by the owner of record, and that he had been authorized by the owner to obtain the permit as his authorized agent.

Builders' Supermarket last provided materials to the Kisers on October 5, 2001. On January 22, 2002 Builders' Supermarket recorded a Memorandum of Mechanics' Lien, using the very general property description contained in the building permit, and listing only Mr. Kiser as the owner, but then sent a letter via certified mail addressed to both Mr. and Mrs. Kiser notifying them of the action taken. On June 11, 2002 Builders' Supermarket filed a Bill of Complaint to enforce its lien in the Circuit Court of Russell County. On January 2, 2003 the Kisers filed a Chapter 13 petition in this Court and on May 22, 2003 they filed this adversary proceeding seeking to have Builders' Supermarket's lien declared invalid.

In addition to Builders' Supermarket's lien of $9,791.83, New Peoples Bank has a first deed of trust against the property in the amount of $59,100 and United Way of Southwest Virginia has a second deed of trust against the property in the amount of $5,238.95. Russell County also has a lien against the property for unpaid real estate taxes of $870.30. Furthermore, Jackson R. Kiser, the father of the male debtor,

has a judgment lien docketed against the property for $7,414.00 and Superior Financial Services has a judgment lien in the amount of $510.86. Thus, the total amount of the liens docketed against this property with an assessed value of $65,000 is $82,925.95. The Debtors have not taken any action to attempt to avoid the judgment liens pursuant to Bankruptcy Code § 522.

The Debtors filed a Motion for Summary Judgment alleging that the complaint to enforce the Mechanics' Lien inaccurately described the property to which Builders' Supermarket supplied materials and that the Memorandum of Lien had a fatal defect in that it only listed one of the owners, Mr. Kiser, when the property was held by both Mr. and Mrs. Kiser as tenants by the entirety. The Debtors do not allege, nor does the Court find any evidence, that the failure of Builders' Supermarket to list Mrs. Kiser on the Memorandum of Mechanics' Lien has resulted in any surprise or prejudice to the Debtors or any of their creditors. After a hearing on the motion, the Court denied summary judgment from the bench, for reasons stated on the record, on the ground that the property description in the Complaint was inaccurate. The Court also rejected, for reasons stated on the record, Builders' Supermarket's defenses that the property was not conveyed to the Kisers as tenants by the entirety and that such creditor in any event was entitled to a lien against the interest on Mr. Kiser in the entireties property. The Court took under advisement the issue of whether the listing of only Mr. Kiser on the Memorandum was a fatal defect rendering Builders' Supermarket's lien invalid.

## *CONCLUSIONS OF LAW*

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(K).

Pursuant to § 43–4 of the Code of Virginia, a contractor or other mechanic's lien claimant may file a memorandum of lien at any time after the materials have been furnished but not later than ninety days from the last day of the month in which materials were furnished. The memorandum must be filed with the clerk of the court in the county or city in which the property is located and it must "show the names of the owner of the property sought to be charged." However, the General Assembly has explicitly stated that substantial compliance with § 43–4 is all that is required for a valid mechanics' lien. Section 43–15 states that "[n]o inaccuracy in the memorandum filed ... shall invalidate the lien, if the property can be reasonably identified by the description given and the memorandum conforms substantially to the requirements of sections 43–5, 43–8, and 43–10, respectively, and is not willfully false." In the case of *Clement v. Adams Bros.–Paynes Co.*, 113 Va. 547, 553, 75 S.E. 294, 296 (1912) the Supreme Court of Virginia (then the Supreme Court of Appeals of Virginia) considered an earlier version of what is now § 43–15 of the Code of 1950. The earlier statute, section 2478 of the Code of 1904, provided that "[n]o inaccuracy in the account filed or in the description of the property to be covered by the lien, shall invalidate the lien". This language was in conformity with section 2476 of such Code, which required that a mechanic's lien claimant must file in the proper clerk's office "an account showing the amount and character of the work done or materials furnished, the payments made, if any, and the balance due, verified by the oath of the claimant or its agent." The Court

held that the statute by its terms only referred to inaccuracies in the account and the description of the property. Accordingly, other deficiencies in the filing did not qualify for the beneficial effects of the "substantial compliance" statute and a strict conformity with other statutory requirements of the memorandum was necessary for it to be valid. The remarkable strictness of the Court's approach is demonstrated by its holding in that case that the affidavit of the corporate claimant's president was inadequate because he was identified as its president rather than its agent. Over the eloquent dissent of Justice Buchanan, the Court held that no lien had been obtained. Thereafter, the General Assembly amended section 2476 to delete the requirement of attaching a statement of account to the memorandum, and section 2478 to provide that any inaccuracy in the memorandum (rather than of the "account") or the property description would not invalidate the memorandum if it conformed "substantially" with the applicable statutory requirements. Thus, the current substantial compliance provision is broader than its predecessor which was interpreted in the *Clement* case.

The Virginia Supreme Court has addressed the issue of substantial compliance with respect to mechanics' liens. In *Blanton v. Owen*, 203 Va. 73, 122 S.E.2d 650 (1961), the Virginia Supreme Court acknowledged that substantial compliance with § 43–4 was sufficient. In that case a husband and wife owned certain real property as tenants by the entirety on which they constructed a house. At the time the house was being built, the lot and house were under contract to be sold to a third party. One of the suppliers of materials recorded a mechanics' lien on the property and listed the husband and the third party purchaser as the owner on the Memorandum of Mechanics' Lien. In a suit to enforce the mechanics' lien, the defendants

argued that the lien was invalid because the memorandum did not list the record owners. The Court rejected this argument holding that, at the very least, the third party purchaser had an equitable interest in said property on which a lien could be perfected. The inclusion of "other names mentioned are immaterial." *Id.* at 78, 122 S.E.2d at 653. The Court concluded that "[t]he memorandum for a mechanics' lien substantially complied with § 43–4, and is good on its face." *Id.* at 77–78, 122 S.E.2d at 653. By holding that the names of the husband and wife were mere surplusage, the Court expressly avoided the issue confronted in the present case, "we do not reach the question of whether a mechanics' lien is enforceable against property owned as tenants by the entireties ... under a lien against the interest of one of the tenants." *Id.*

Neither *Blanton* nor any decision of the Virginia Supreme Court since has determined whether listing only one co-owner of property held as tenants by the entirety meets the substantial compliance requirement of § 43–15. However, two Virginia Circuit Courts have been confronted with this issue and both have reached the same conclusion, that the listing of one of the owners does not satisfy the substantial compliance requirement of § 43–15. In *Gunther v. Cantrell*, 11 Va. Cir. 255 (Fairfax Co.1988), the first reported opinion dealing with this issue, the Fairfax Circuit Court held that the "[f]ailure to name the record owner at the time the memorandum is filed renders the lien invalid ... because in order to perfect a lien, all of the statutory requirements must be met." The Court concluded that "the omission of any one of them is fatal." *Id.* at 258. In *Duckworth v. Satlin*, 24 Va. Cir. 157 (Fairfax Co.1991), the Fairfax Circuit Court was again confronted with this same issue and again decided that the substantial compliance

standard had not been met. There is only one other Circuit Court in Virginia that has published an opinion on this issue and, citing *Gunther,* it reached the same conclusion, that the listing of one co-owner is not substantial compliance within the meaning of § 43–15. *Atkins v. Jim Carpenter Co.,* 18 Va. Cir. 432 (Stafford Co.1990).

While the Virginia trial courts that have dealt with this issue have come to a uniform conclusion, a review of decisions from other state appellate courts interpreting similar statutes finds a more divided opinion. The Supreme Court of New Jersey has held that failure to name a wife on the notice of a mechanics' lien when the property was held as tenants by the entirety is a fatal error rendering the lien invalid. *Belmont Coal and Lumber v. James F. Wood Builders, Inc.,* 125 N.J.L. 315, 15 A.2d 625 (1940). Additionally, the Supreme Court of Michigan held that "[l]ien statutes are innovations upon the common law over the rights of property, not to be extended in operation and effect beyond their plain provisions. As to their provisions by which lien attaches strict construction is the recognized rule." *Lallevich v. Bartoszewitz,* 205 Mich. 375, 377, 171 N.W. 351, 351 (1919). There the Court concluded that the listing of only the husband on the claim of the lien while the property was held as tenants by the entirety invalidated the lien. Neither of these cases cited or discussed a substantial compliance statute similar to the one adopted by Virginia's General Assembly.

An Indiana appellate court has held that the failure to name the wife on the notice of mechanics' lien when the property was jointly owned as tenants by the entirety constituted substantial compliance with the notice statute. *Beneficial Finance Co. v. Wegmiller Bender Lumber Co.,* 402 N.E.2d 41 (Ind.Ct.App.1980), *reh'g denied,* 403 N.E.2d 1150 (Ind.Ct.App.1980). In that case a husband entered into a contract to have Wegmiller supply materials for use in the construction of his house upon land he owned with his wife as tenants by the entirety. After providing more than $21,000 in materials for the construction, Wegmiller filed a mechanics' lien on the property. However, it failed to list the wife as the co-owner on the notice filed with the county. In a suit to enforce the lien, the mortgagee argued that, by failing to list both of the owners, Wegmiller did not substantially comply with the mechanics' lien statute as required. The Indiana Court reasoned that substantial compliance depended "upon the degree of non-compliance with the letter of the statute, the policy which underlies the particular statutory provision in question, and the prejudice which may have resulted to either the owner of the property or other third parties who have an interest in the real estate." *Id.* at 45. Focusing on the fact that "any third party searching the record would have found the notice filed by Wegmiller naming [the husband] as owner" the court failed "to see how any third party could claim to have been misled or prejudiced by the fact a mechanic's lien claimant included the name of only one spouse as 'owner' of the property in a statutory notice." *Id.* at 46. A dissent to this decision, however, disagreed that naming only one of two owners could constitute "substantial" compliance with the statutory obligation to name the "owner", arguing that this concept only extended to such errors as "trivial errors of spelling ..., misdescription ..., [and] business status of parties." 402 N.E.2d at 49 (Young, J.). In addition to Indiana, a Missouri appellate court has held that the naming of only the husband on the lien paper filed with the clerk of court when the property was held as tenancy by the entirety did not invalidate the lien, "[mechanics' lien statutes] contemplate that an honest mistake

may be made in ascertaining the names of all the owners and intend that the lien shall not be lost in consequence of such mistake in the lien paper or the notice." *Independence Sash, Door & Lumber, Co. v. Bradfield,* 153 Mo.App. 527, 531, 134 S.W. 118, 119 (1911). It should be noted, however, that the Missouri Court applied a liberal construction standard to the facts of that case. *Id.*

The Indiana Court's standard for determining substantial compliance appears to be in line with general notions of how this ought to be analyzed. The definition of substantial compliance in Black's Law Dictionary directs the reader to the definition of the substantial performance doctrine which it defines as "the equitable rule that, if a good-faith attempt to perform does not precisely meet the terms of the agreement, the agreement will be considered complete if the essential purpose of the contract is accomplished." Black's Law Dictionary 1443 (7th ed.1999). Virginia Courts have analogized the concept of substantial compliance with respect to contractual obligations to the concept of substantial compliance regarding statutory requirements. *See Snider v. Commonwealth,* 26 Va.App. 729, 733, 496 S.E.2d 665, 667 (1998) (citing the definition of substantial compliance with respect to a real estate broker's contract as support for the definition of substantial compliance in regards to compliance with a statute governing the taking of blood samples for D.U.I. prosecution purposes). ("The principle of substantial compliance, which is predicated upon a failure of strict compliance with applicable requirements, operates to replace the protective safeguards of specificity with a less exacting standard of elasticity, in order to achieve a beneficial and pragmatic result." *Id.* at 733, 496 S.E.2d at 667, *citing Coleman v. Pross,* 219 Va. 143, 158, 246 S.E.2d 613, 622 (1978)); *see also Gunther,* 11 Va. Cir. at 257 (likewise analogizing the defini-

tion of substantial compliance with respect to a real estate brokers' contract to substantial compliance regarding mechanics' lien statutes). In the context of contracts, the Virginia Supreme Court has held that substantial compliance "means that although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, he has received substantially the benefit he expected, and is, therefore, bound to pay." *Akers v. James T. Barnes of Washington, D.C., Inc.,* 227 Va. 367, 371, 315 S.E.2d 199, 201 (1984) (adopting definition stated in *Newcomb v. Schaeffler,* 131 Colo. 56, 62, 279 P.2d 409, 412 (1955)). The Virginia Court further suggested "that the materiality of the difference . . . is pertinent to the question of substantial compliance." *Id.* at 370, 315 S.E.2d at 201. The Court held that a financing commitment which required 65% pre-sales of condominium units and an interest rate floor of 14% did not substantially comply with brokerage contract providing for a 50% pre-sales requirement with an interest rate floating with the market. Accordingly, the broker was denied a commission.

The notion that "essential purpose" is the determining factor in deciding whether there has been substantial compliance with respect to statutes is prevalent in the case law. *See Nedved v. Welch,* 585 N.W.2d 238 (Iowa 1998) (holding that substantial compliance with a statute governing expert witnesses is "compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Id.* at 240); *see also Union Bay Preservation Coalition v. Cosmos Development & Admin. Corp.,* 127 Wash.2d 614, 902 P.2d 1247 (1995) (holding that substantial compliance with the Administrative Procedures Act is "actual compliance in respect to the substance essential to every reason-

able objective" of the statute. *Id.* at 620, 902 P.2d at 1250); *Rogers v. Roberts,* 300 Or. 687, 717 P.2d 620 (1986) (holding that substantial compliance with respect to statutes governing ballots requires compliance with "essential matters necessary to assure every reasonable objective of the statute." *Id.* at 691, 717 P.2d at 622); *City of Lenexa v. City of Olathe,* 233 Kan. 159, 660 P.2d 1368 (1983) (holding that substantial compliance regarding annexation statutes means compliance with "essential matters necessary to assure every reasonable objective of the statute." *Id.* at 164, 660 P.2d at 1373); *North Carolina Nat. Bank v. Burnette,* 297 N.C. 524, 256 S.E.2d 388 (1979) (holding that substantial compliance with respect to public sale notice statutes means "compliance which substantially, essentially, in the main, or for the most part, satisfies the procedures." *Id.* at 532, 256 S.E.2d at 393).

Virginia courts historically seem to have taken a conservative view of substantial compliance with respect to mechanics' liens generally. In *American Standard Homes v. Reinecke,* 245 Va. 113, 425 S.E.2d 515 (1993), a supplier of materials under a contract furnished replacement parts more than 90 days after the last day of the month in which material was furnished under the original contract. The supplier argued that the furnishing of replacement parts advanced the date on which it could perfect a mechanics' lien for a debt due under the original contract. The Virginia Supreme Court first noted that, because mechanics' lien statutes are in derogation of the common law, "requirements of the perfection statute are to be construed strictly." *Id.* at 119, 425 S.E.2d at 518. In the very next paragraph, however, the Court elaborated that it believed that the "correct rule ... is, that there must be substantial compliance with the requirement of that portion of the statute which relates to the creation of the lien;

but that the provisions with respect to its enforcement should be liberally construed." *Id.* The Court concluded that because the original contract did not require purchase of replacement parts, those purchases constituted separate contracts which did not advance the date by which the supplier could perfect a mechanics' lien for the original contract. Given this analysis, the Court's decision seems entirely reasonable and predictable because it cannot be said that filing a memorandum of lien beyond the permissible time period complies, either strictly or substantially, with the requirement to file it within such time period. The Court quite properly noted that to rule otherwise would mean that "the time limitation for perfecting a materialman's lien would never begin to run as long as the materialman could close another sale of replacement materials with the other party to his contract." *Id.* at 120–21, 425 S.E.2d at 519.

 The Virginia Supreme Court's interpretation of mechanics' lien statutes in *Reinecke* is consistent with the Court's previous holdings on this subject. In *Wallace v. Brumback,* 177 Va. 36, 12 S.E.2d 801 (1941), the Supreme Court was faced with a situation in which a materialman recorded a lien against property after it had been sold to a third party and listed the original owner on the Memorandum. The Court rejected the argument that the third party's actual knowledge of the lien made it enforceable against him,

> [k]nowledge ... of the construction of the building can not take the place of the statutory requirements. For the very existence and continuation of the lien, as well as the jurisdiction of the court to enforce it, rest upon compliance with the statute and not upon equitable principles.

*Id.* at 40, 12 S.E.2d at 802. The Court concluded that because "owner" meant the one who owned the property at the time the lien was recorded, failure to list that person rendered the lien invalid despite his actual knowledge. This decision is entirely in keeping, however, with the policies of the Virginia recording statutes. If the Court had upheld a memorandum of lien filed against a person who was no longer an owner of the property at the time the memorandum was filed, a title searcher would not be safe in terminating his adverse conveyance search against that owner with the recordation of the deed to the new owner, but would be obliged to continue that search until ninety days following the last day of the month in which the deed was recorded. While it is true, of course, that a mechanics' lien can be perfected after the date a deed to a new owner is recorded, the Court quite rightly held that in order to do so, the memorandum must be filed against the new owner's name in order to be effective. Such a rule does not relieve the former owner of any contractual liability to the claimant, it simply requires that to obtain a valid lien against the property, the memorandum must be filed against the current owner of record. There are many other Virginia Supreme Court opinions strictly applying the requirements for perfecting a mechanics' lien. *See Clement v. Adams Bros.–Paynes Co.,* 113 Va. 547, 553, 75 S.E. 294, 296 (1912) (holding that the mechanics' lien was invalid due to the fact that the company president who filed the required affidavit did not list himself as agent); *Shackleford v. Beck,* 80 Va. 573 (1885) (holding that the mechanics' lien was invalid because the account filed by the lien claimant was not itemized).

■■■ The essential purpose of § 43–4 of the Code of Virginia is the same as for all recording statutes, to "enable him to give notice to all the world of his claim, to the claim of a subsequent purchaser who has acted on the faith of a public record." *Payne v. Buena Vista Extract Co.,* 124 Va. 296, 318, 98 S.E. 34, 42 (1919) (quoting *Conn. Mutual Life Co. v. Talbot,* 113 Ind. 373, 380 14 N.E. 586, 590 (1887)). Therefore, to determine whether a lienor's actions substantially complied with § 43–4, the court's inquiry should be directed to whether the filing put the world on notice of the lienor's claim. For the purposes of the case before this Court, it concludes that if a properly conducted title search would have uncovered the existence of Builders' Supermarket's mechanics' lien, the "essential purpose" of § 43–4 has been served and that a filing in the name of one spouse against property owned as tenants by the entirety constitutes substantial compliance with *Va. Code* § 43–4.

■■■ It is the Court's conclusion that a properly conducted title search by a potential buyer or creditor would have uncovered the existence of Builders' Supermarket's lien. In the eyes of the law, when property owned by husband and wife is owned as tenants by the entirety, each of the spouses is considered to own the "entirety" of the property. *In re Black,* 145 F.Supp. 689 (E.D.Va.1956); 9B Michie's Jurisprudence 343–47, Husband and Wife § 29 (1995 Repl. Vol.). The Court believes that a title searcher of a particular property owned as tenants by the entirety would never just search the record for adverse conveyances by, or claims against, one of the owners, but would search the names of both spouses. While a deed of trust executed by and recorded against only one spouse, or a judgment against and docketed as to only one spouse, creates no lien against property owned by both spouses as tenants by the entireties, entitlement to a mechanics' lien isn't based on the legal liability of both spouses to pay, but upon the improvement to the property arising

from the labor and/or materials provided by the mechanics' lien claimant. Va.Code of 1950 § 43–3, as amended; *Weaver v. Harland Corporation*, 176 Va. 224, 10 S.E.2d 547, 549 (1940); *Withrow Lumber Company v. Glasgow Inv. Co.*, 101 F. 863, 866 (4th Cir.1900); 12B Michie's Jurisprudence 579, Mechanics' Liens § 2 (2003 Repl.Vol.). For that reason the title searcher is much more concerned in checking mechanics' lien claims to determine the specific property against which any such claim is being made. While the Debtors in their Motion for Summary Judgment challenged the property description in the Complaint filed in the state court to enforce the lien, they have not challenged the adequacy of the property description in the Memorandum of Lien. The names of the owner(s) of such property are quite relevant, of course, in determining the identification of the property, but once that is accomplished, the title searcher is not particularly interested in whether the memorandum names all of the owners because he is on notice that a claim is being asserted against the specific property he is checking. While a reasonable argument can be advanced that a title searcher might disregard a memorandum of lien filed against the name of only one spouse on the ground of non-compliance with the statutory requirement to file against "the names of the owner" of the property, the Court doubts that a careful title abstractor would take that risk. Therefore, it is the Court's conclusion that Builders' Supermarket substantially complied with the requirements of § 43–4 when it listed only one co[-]owner of real property held as tenants by the entirety because its filing satisfied the "essential purpose" of that statute. Thus, Builders' Supermarket's lien is valid and the Debtors' Motion for Summary Judgment will be denied. It is important to note that this decision considers tenancy by the entirety property

whereby the co-owners are viewed as one entity in the eyes of the law. Thus, this opinion may not be applicable to other forms of joint ownership.

The Court is mindful of the fact that its duty is to apply Virginia law, as such law actually is, rather than what it might choose for it to be, and that its decision is contrary to the published Virginia trial court opinions on point. If the Supreme Court of Virginia had decided this precise issue, its ruling would be applied here without hesitation. However, the Court is persuaded by the rationale behind § 43–4 and, just as importantly, § 43–15, that the General Assembly has made a fairly clear policy decision that contractors, laborers and suppliers of materials used to construct real property improvements are to be protected if the memorandums of lien they file either exactly or "substantially" conform to the statutory requirements. If the General Assembly had been satisfied with court decisions very strictly enforcing the statutory requirements for obtaining mechanics' liens, it would have had no reason to enact the present § 43–15 protecting filings which "substantially" comply with the statute. Drawing the line between those filings which don't entirely satisfy the statutory requirements but "substantially" do so and those which simply fail to comply can require the making of very difficult and close judgments, ones about which reasonable judges will come to different conclusions. Such is the case here. When the Court concludes, as it does in this case, that neither the property owners, nor their creditors, nor any careful title searcher reasonably could be misled or possibly prejudiced by Builders' Supermarket's failure to include both spouses' names on the memorandum of lien, it further concludes that the essential purpose of the statute has been accomplished and, therefore, that the statutory requirements

have been substantially complied with. In doing so the Court notes a recent decision from Chief Judge Tice of the Bankruptcy Court for the Eastern District of Virginia describing a "trend in Virginia towards leniency construing notary and acknowledgment certificates" required for lien memorandums pursuant to Va.Code § 43–4. *In re Terry*, 262 B.R. 657 (Bankr. E.D.Va.2001). While due to the closeness of the issue presented, the Court has given serious consideration to requesting the District Court to certify the question to the Supreme Court of Virginia pursuant to its Rule of Court 5:42, it has ultimately decided that the importance of a prompt decision rendered without imposing additional litigation expense upon the parties outweighs the value that authoritative declaration of Virginia law on this point by such Court would provide.

The Court by separate order will deny the Debtors' Motion for Summary Judgment.