## CIRCUIT COURT OF STAFFORD COUNTY

Leland Keith Atkins
and Joyce A. Atkins

    v.

Jim Carpenter Co. et al.

Case No. (Chancery) 250-88

Unique Construction Co., Inc.

    v.

Jim Carpenter Co. et al.

Case No. (Chancery) 249-88

January 29, 1990

By JUDGE JAMES W. HALEY, JR.

Pursuant to § 43.17-1 of the Code, these companion causes seek determination of the validity of a materialman's mechanic's lien.

1. *Leland Keith Atkins and Joyce A. Atkins v. Jim Carpenter Company et al.*

Complainants purchased property designated as 0.742 acres (and herein as Lot 20) in Stafford County by Deed recorded in Deed Book 454, at page 474, and took the property as set forth in the style of this cause as tenants by the entirety with the right of survivorship as at common law. The memorandum of lien filed recites the owner as "L. Keith Atkins."

Respondent materialman, Jim Carpenter, maintains that the quoted recital of the owner of the subject property, as required by § 43-4 and by § 43-9 (the form for which is set forth in § 43-10) complies with those sections pursuant to the substantial performance provisions of Section 43-15."[1]

The question thus presented is apparently one of first impression in Virginia. In *Blanton v. Owen*, 203 Va. 73, 78, 122 S.E.2d 650 (1961), the Court stated:

> We do not reach the question of whether a mechanic's lien is enforceable against property owned as tenants by the entireties with the right of survivorship between them as at common law, under a lien against the interest of one of the tenants.

In *Wallace v. Brumback*, 177 Va. 36, 12 S.E.2d 801 (1941), the lienor named as owner the individual who owned the property when work began, not the transferees who owned the property of record when the lien was filed. In invalidating the lien, the Court noted:

> The fact that the mechanic's lien is to be indexed in the general index of deeds is a plain indication that (a lienor) is to be placed in the same category as a purchaser or deed of trust creditor . . . (upon whom) the law places . . . (the) duty . . . *to ascertain* the names of the "owner of the property sought to be charged . . . ." *id.* at 45, 12 S.E.2d 805.

*See also, E. E. Stump Well Drilling, Inc. v. Willis,* 230 Va. 445, 338 S.E.2d 841 (1986); *Gunther v. Cantrell,* 11 Va. Cir. 255 (1988).

It is the opinion of the Court that the notice filed herein does not constitute substantial compliance with

---

[1] Section 43-15 recites in part: "No inaccuracy . . . shall invalidate the lien . . . (when) . . . the memorandum conforms substantially to the requirements of . . . Section 43-10."

the statutory requirement that the memorandum of lien recite the owners of the subject property.

Accordingly, the exception to the Commissioner's Report on this point is overruled.

2. *Unique Construction Co., Inc. v. Jim Carpenter Company et al.*

At times relevant herein, Unique was owned by Leland Keith Atkins, and the subject property (herein Lot 32) in Stafford County was owned by Unique.

Respondent Richard W. Dudley was hired as subcontractor by Unique to approximately simultaneously erect houses on Lot 32 and Lot 20 (*see*, Chancery No. 250-88 above), pursuant to oral contracts of $27,000.00 for each structure, the price on the former later being raised to $30,400.00. (Comm. Rpt. p. 6).

Dudley's whereabouts are unknown, and he did not testify in these proceedings.

Unique maintains that Dudley had been paid in full on both houses in 1987 (T-14) and that as a consequence, the Jim Walker lien, filed in 1988 as Dudley's materialman, is barred by § 43-9.[2]

Recognizing it had the burden of proof, Unique seeks to show full payment by: (a) the introduction of a series of checks purportedly paid to Dudley for work on Lot 32 and (b) an undated and unacknowledged alleged receipt from Dudley reciting payment in full, though designating no amount, for work done on Lot 32. (T-23-26; Comm. Rpt. Ex. 9 refused).

Many of the checks Unique introduced had original notations thereon allocating payment to lots other than those which Unique now claims payment by those checks. Some checks had no allocation noted, and some checks were allocated to property other than Lot 20 and Lot 32.

Suffice it to say that with respect to at least from Check # 1469 (originally allocated by check notation as $20,000.00 all to Lot 20) and from Check # 1518 (originally

---

[2] Section 43-9 recites in part that "the amount for which such lien may be perfected . . . shall not exceed the amount for which such subcontractor could himself claim a lien . . . ."

allocated by check notation as $6,000.00 all to Lot 20), a total of $21,000.00 was reallocated by Atkins from Lot 20 to Lot 32 subsequent to the checks' tender, negotiation, cancellation, and return from his bank.

Atkins admits this timing for the reallocation and that his prior testimony that the reallocation was made at the time of tender to Dudley was a "mistake." (T-38 *et seq.*). The commissioner found that this $21,000.00 reallocation did not in fact constitute payment by Unique for work on Lot 32.

The proffered receipt (Ex. 9 refused) is clearly hearsay. *See* Charles E. Friend *The Law of Evidence in Virginia*, 227 Written Hearsay, at 404 *et seq.* (1977 Ed.). Indeed, this alleged receipt is being offered to show by *ex parte* written statement the opinion question in this cause, *i.e.*, has payment been made in full for Lot 32.

The commissioner's ruling that the alleged receipt was not admissible is correct, and the exception to the same is overruled.

No exception has been taken to the commissioner's finding that the contract price for Lot 32 was $30,400.00. It is the opinion of the Court that, as the commissioner found, Unique has failed to prove that the $21,000.00 reallocation to Lot 32 was payment to Dudley for work on Lot 32. Therefore, this $21,000.00 must be deducted from any claim of payment for work on Lot 32.

Unique makes no claim that its checks show overpayment to Dudley for Lot 32, but only that the contract price of $30,400.00 has been paid in full. Subtracting therefrom the $21,000.00 allegedly paid for Lot 32 leaves a $9,400.00 balance as the only sum property allocated toward payment on Lot 32.

The Commissioner's Report is therefore modified as to show only $9,400.00, not $16,400.00, as having been paid by Unique for Lot 32. (*See*, Comm. Rpt. p. 11).

Except as modified in the immediately preceding sentence, the exceptions to the commissioner's report in this cause are overruled.