**In re Jerome M. TERRY, Denise W. Terry, Debtors.**

No. 00–60057–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 24, 2001.

William C. Parkinson, Jr., Richmond, VA, for Debtors.

Graham T. Jennings, Jr., Powhatan, VA, for Claimant.

Robert E. Hyman, Richmond, VA, Chapter 13 Trustee.

Gregg R. Nivala, Office of the United States Trustee, Richmond, VA, Assistant United States Trustee.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held September 29, 2000, on debtors' objection to claim of Daniel Davis Construction, Inc. (DDCI) and DDCI's objection to confirmation of debtors' second amended plan. At conclusion of hearing, the court took both objections under advisement.

The court has reviewed statutory authority and case law addressing (1) whether the mechanic's lien filed on behalf of DDCI was perfected, and (2) whether the mechanic's lien filing for the repair of the Terry residence properly established DDCI's claim as secured. The court concludes that the affidavit filed by the president of DDCI substantially complies with Virginia Code § 43–5. Accordingly, regarding debtors' objection to DDCI's claim, the court rules that DDCI has a perfected mechanic's lien against debtors' realty, that DDCI's claim is secured to the extent of $6,500.00, and the claim is disallowed as to the balance. DDCI's objection to confirmation will be overruled.

### Findings of Fact.

Following a fire at their residence located in the City of Richmond, Mr. and Mrs. Terry contracted with DDCI to clean and repair portions of their residence. The contract, dated April 27, 1999, listed a "total cost of job" as $9,281.84.

On July 12, 1999, DDCI filed a memorandum for mechanic's lien dated July 8, 1999, and accompanying affidavit in the Circuit Court of the City of Richmond in the amount of $10,197.17. DDCI filed the lien as its charge for services and materi-

als furnished to repair and clean the Terry residence under the parties' contract.

The Terrys subsequently filed a chapter 13 petition on February 2, 2000, and filed an amended chapter 13 plan on March 17, 2000. DDCI filed an objection to confirmation of the amended plan.

On March 16, 2000, DDCI filed a proof of claim as a secured creditor holding a mechanic's lien against debtors' residence in the amount of $10,658.78.[1]

On April 28, 2000, debtors filed a second amended plan. The second amended plan treats DDCI as a secured creditor in the amount of $10,306.44. DDCI filed an objection to debtors' second amended plan on May 19, 2000.

On June 14, 2000, debtors filed an objection to the allowance of the proof of claim filed by DDCI. In paragraph 7 of their objection, debtors request that "said claim [of DDCI] be disallowed as a secured claim and allowed as a general unsecured claim in the amount of $5,711.51."

In its performance under the contract, DDCI failed to complete all of the repair work required, and the quality of the work performed was to a significant degree unacceptable. Debtors have expended $415.33 to complete work encompassed under the contract, and they will be required to expend additional funds amounting to approximately $3,155.00 to complete the necessary repairs.

The reasonable value of DDCI's performance under the contract is $6,500.00.

### Discussion and Conclusions of Law.

#### I. Mechanic's Lien Perfection.

■ Sections 43–1 to 43–23.2 of the Virginia Code[2] are the Virginia mechanic's lien statutes, which provide for the perfection and enforcement of mechanic's liens for work performed and materials furnished by contractors. In summary, § 43–3 provides for a contractor's mechanic's lien, § 43–4 provides that a contractor may perfect its lien by filing a memorandum of lien in the appropriate recording office, and § 43–5 provides a form of memorandum which, when filed, shall be deemed sufficient under the statute.

The mechanic's lien statutes are applicable in the present case of DDCI's home repair contract with debtors. For its contractual repair work to debtors' home, DDCI filed a memorandum of mechanic's lien. The only issue in this case over the perfection of DDCI's mechanic's lien is whether the affidavit attached to the recorded memorandum conforms to the requirements of Virginia Code § 43–5, which prescribes the following form:

*Affidavit.*

State of Virginia,

County (or city) of ................., to wit:

I, ....... (notary or other officer) for the county (or city) aforesaid, do certify that ...................... claimant, or ..............., agent for claimant, this day made oath before me in my county (or city) aforesaid that ......................... (the owner) is justly indebted to claimant in the sum of ............................ dollars, for the consideration stated in the foregoing memorandum, and that the same is payable as therein stated.

---

1. $10,658.78 represents a total sum of $10,197.17 in principal as the amount DDCI claims debtors owe and $461.61 in interest of $2.23 per day for the period from 7/9/99 to 2/1/00.

2. Mechanics' and Certain Other Liens, Va. Code Ann. §§ 43–1 to 43–23.2 (Cumm. Supp. 2000 & Repl.Vol.1999).

Given under my hand this the ........ day of ................, ■ ............... .............
(Notary Public or Magistrate, et cetera.)

VA. CODE ANN. § 43–5 (1999 Repl.Vol.) (emphasis added).

DDCI's affidavit varies from the statutory form in that it does not contain the form words "...... claimant, or .........., agent claimant." *Id.* Instead, this statutory text is replaced with the clause, "Daniel G. Davis, the President and owner of DANIEL DAVIS CONSTRUCTION, INC." Thus, DDCI's affidavit does not precisely follow the statutory form because it does not state that Daniel G. Davis is agent for claimant Daniel Davis Construction, Inc.

■ Virginia case law holds that perfection of mechanic's liens pursuant to § 43–4 is to be strictly construed. *See American Standard Homes Corp. v. Reinecke,* 245 Va. 113, 425 S.E.2d 515, 518 (1993). Indeed, the Virginia Supreme Court held in a 1912 case that substantial compliance with the statutory perfection requirements meant that execution of an affidavit by the president of a corporation that did not specifically state that the president was an agent of the corporation was not sufficient; the lien was not perfected. *See Clement v. Adams Bros.–Paynes Co.,* 113 Va. 547, 75 S.E. 294, 299 (1912).

It does not appear that the Virginia Supreme Court has considered this exact issue since *Clement.* However, in 1919, the Virginia General Assembly enacted Virginia Code § 49–7, which provides:

An affidavit filed for a corporation or other entity may be made by its president, vice-president, general manager, cashier, treasurer, a director or attorney without any special authorization therefor, or by any person authorized by a majority of its stockholders, directors, partners or members to make the same.

VA. CODE ANN. § 49–7 (1998 Repl.Vol.)

Because Virginia Code § 49–7 provides that a corporate president may make an affidavit for a corporation, this court finds it unlikely that today a Virginia court would reach the same result as *Clement. See Diversified Dev. Co. v. Sendi,* Nos. 129473 & 128952, 1994 WL 1031341, *2, 34 Va. Cir. 390 (Fairfax Co.1994); *Northern Va. Drywall, Inc. v. Lower,* No. 15322, 1993 WL 946329, *1–2, 32 Va. Cir. 251 (Loudoun Co.1993) (acknowledging the change in the common law rule and nullification of the *Clement* rule as a result of Virginia General Assembly's enactment of Virginia Code § 49–7).

In fact, recent circuit court case law highlights the emergence of such a change in Virginia law. For instance, the 1991 case *R.G. Griffith, Inc. v. Great Falls West Assocs.* involved a similar question of whether a mechanic's lien is fatally defective because of a technical error in the notary certificate. *See* 26 Va. Cir. 22, 1991 WL 834969, *1–2 (Fairfax Co.1991). In *Griffith,* the court acknowledged Virginia's well-settled policy to disregard such technical deficiencies and instead indicated a willingness on the part of Virginia courts to accept substantial compliance with verification requirements. *See id.; see also Sendi,* 34 Va. Cir. at 390.

The Virginia Supreme Court has conveyed a posture of leniency akin to the Virginia circuit courts regarding the upholding of certificates of acknowledgment if at all possible. In fact, in *Cumbee v. Myers,* the Virginia Supreme Court instructed parties to disregard obvious technical errors in certificates of acknowledgment if necessary. *See* 232 Va. 371, 350 S.E.2d 633, 634–35 (1986). The Virginia Supreme Court further echoed the same policy of requiring only *substantial* and

*not literal* compliance with mechanic's lien statutes in *Diebold & Sons Stone Co. v. Tatterson. See* 115 Va. 766, 80 S.E. 585, 586–87 (1914) (upholding a certificate of notary that did *not* disclose the signer was the president and agent for the complainant corporation, but contained his signature and disclosure in an account in a mechanic's lien).

In light of the Virginia statutory and case law authority identifying a trend in Virginia towards leniency in construing notary and acknowledgment certificates, the court therefore finds that DDCI's affidavit, made by its president, substantially complies with Virginia Code § 43–5. Further, the court finds that DDCI has perfected its mechanic's lien against debtors' real property by filing its memorandum on July 12, 1999, prior to debtors' bankruptcy filing.

## II. Mechanic's Lien Enforcement.

Having determined that DDCI perfected its mechanic's lien prior to debtors' bankruptcy, the court must consider whether the mechanics lien is enforceable as a secured claim in this bankruptcy case without further effort on the contractor's part.

Under the Virginia mechanic's lien statutes, the next step after perfection of the lien is enforcement. In summary, a contractor may enforce its lien by filing a bill in equity, which must be filed within six months following the filing of the memorandum. *See* VA. CODE ANN. §§ 43–17, 43–22 (Cumm. Supp.2000 & Repl.Vol.1999).[3]

■ Here, DDCI did not commence suit to enforce its mechanic's lien prior to the debtors' bankruptcy, and it may not do so now unless this court grants relief from the automatic stay pursuant to Bankruptcy Code § 362(d). *See H.T. Bowling, Inc. v. Bain (In re Bain),* 52 B.R. 58, 60 (Bankr. W.D.Va.1985), *aff'd in part, rev'd in part on other grounds,* 64 B.R. 581 (W.D.Va. 1986). However, at this stage of the debtors' bankruptcy, it is doubtful whether the parties would wish to adjourn to state court to litigate enforcement of the mechanic's lien, particularly since they have already participated in an evidentiary hearing on the value of DDCI's lien.

■ In any event, a mechanic's lien enforcement suit in Virginia state court is not necessary here. This court has jurisdiction to adjudicate the allowability and amount of DDCI's proof of claim under Bankruptcy Code § 502 and to determine the secured status of the claim under § 506.

■ Argument could be made that DDCI's mechanic's lien is inchoate. This is based upon federal case law relating to federal lien priorities that holds that a state mechanic's lien that has not been reduced to judgment is an inchoate lien. *See W.T. Jones & Co. v. Foodco Realty, Inc.,* 318 F.2d 881, 887–88 (4th Cir.1963). However, as here, where federal liens are not involved, Virginia law allows for the relation back of a perfected mechanic's lien to defeat intervening liens. *See* VA. CODE ANN. § 43–21 (Repl.Vol.1999); *In re Bain,* 52 B.R. at 60. Moreover, the court need not decide whether DDCI's lien is inchoate because an inchoate lien is entitled to secured status under § 506. *See* 4 COLLIER ON BANKRUPTCY ¶ 506.03[1][a][i](Lawrence P. King, ed., 15th ed. rev.1999).

■ Accordingly, the court finds that to the extent of the value of DDCI's repair

---

**3.** The debtors' filing of bankruptcy extended this statute of limitations. *See* 11 U.S.C. § 108(c).

work as determined below, DDCI has a secured claim. The court makes no determination as to whether the debtors may have any basis to avoid DDCI's lien. *See* 11 U.S.C. § 522(f); 4 COLLIER ON BANKRUPTCY at ¶ 522.11[2].

### III. Value of DDCI's secured claim.

■ A proof of claim is prima facie evidence of the validity and amount of the claim provided the proof of claim is filed in accordance with 11 U.S.C. § 501. *See also* 11 U.S.C. § 502(a); FED. R. BANKR. PROC. 3001(f). When a party objects to the proof of claim under the procedures set forth in Bankruptcy Rule 9014, the objector carries the burden of going forward with evidence on the validity and amount of claim. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992) (stating the burden of proof for claims shifts: claims start off as prima facie valid if they allege facts sufficient to suppose legal liability to the claimant, but if objector then produces evidence to refute one allegation necessary to achieve legal sufficiency for the claim, then the burden shifts back to the claimant to prove the validity of claim by a preponderance of the evidence).

■ If an objector succeeds in overcoming the prima facie effect of the claim under the presumption discussed above, the ultimate burden remains on the claimant to prove the claim's validity by a preponderance of the evidence. *See id.* In sum, the overall effect of this burden-shifting process is to return the burden from the objector to the claimant.

Here, the claimant, DDCI, enjoyed the original presumption of prima facie validity and claim amount as a result of filing its proof of claim on March 16, 2000, and debtors bore the burden of introducing evidence of the invalidity or excessiveness of DDCI's claim. At hearing on the objection, debtors presented evidence and testimony of the incomplete and inadequate nature of the DDCI repair work that indicated that the amount of DDCI's claim was excessive.

Thus, debtors overcame the prima facie presumptive effect given to DDCI's proof of claim, which shifted the ultimate burden to DDCI to prove the validity of its claim by a preponderance of the evidence. DDCI's evidence fails to establish the allowability of its claim in excess of the amount allowed by the court.

As the court has found, DDCI's contractual repair work on debtors' realty was incomplete and not performed in an acceptable manner. After considering all of the evidence, the court finds that the value of the work supports a secured claim in the amount of $6,500.00. The balance of DDCI's claim is disallowed.

■ A separate order will be entered allowing DDCI's secured claim in the amount of $6,500.00, and disallowing the balance. Debtors' second amended chapter 13 plan treats the claim as secured, but lists an incorrect amount. However, the court will overrule DDCI's objection to confirmation because the trustee will pay the claim only as to the amount allowed by the court.